[Civ. No. 48536. Second Dist., Div. Three. Jan. 26, 1977.]

MARVIN A. RANDOLPH, Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

## COUNSEL

Reich, Adell & Crost and Julius Reich for Plaintiff and Appellant.

Burt Pines, City Attorney, John B. Rice, Assistant City Attorney, and Neil C. Baker, Deputy City Attorney, for Defendants and Respondents.

## OPINION

**COBEY, J.**—Petitioner, Marvin A. Randolph,[1] appeals from a judgment denying him a writ of mandate directing his reinstatement with back pay to his former position of fire department civilian ambulance attendant. His appeal lies. (Code Civ. Proc., §§ 1110, 904.1, subd. (a).) The fundamental question posed is whether the City of Los Angeles properly terminated him as a probationary employee. We conclude that it did for reasons that follow.

Randolph was promoted from ambulance driver to ambulance attendant effective November 24, 1974. He was demoted on May 29, 1975. His six-month period of probationary employment would have ended on May 24, 1975, except that prior to that date he had been absent from work a total of 16 calendar days by reason of industrial injuries and, under rule 5.26 of respondent Board of Civil Service Commissioners of

---

[1]Randolph's union, American Federation of State, County and Municipal Employees, Local No. 2739, is technically also an appellant.

the City of Los Angeles, these days were added to the probationary period, thereby extending it to June 9, 1975.[2]

■ Randolph contends that this rule is invalid because the board had no authority under the city charter to extend the probationary period beyond six months, the extension authorized by the rule violates the constitutional requirement of equal protection of the laws, and also breaches public policy in discriminating against those, such as Randolph, who have suffered industrial injuries.

■ Randolph's third contention does not require extended consideration. It rests on the assertion that Labor Code section 132a states a universal policy of nondiscrimination against those injured industrially.[3] This policy of nondiscrimination is not as broad as Randolph would make it. As can be seen from the remainder of the section making its violation both a misdemeanor and the reason for a possible 50 percent increase in the workers' compensation otherwise payable (see Lab. Code, § 4553), the discrimination, prohibited and penalized by section 132a, involves either an employer or his insurer threatening or taking punitive action of any kind against industrially injured employees because they avail themselves of their rights under the Workers' Compensation Act as codified (see Lab. Code, §§ 3200, 3201) or in the case of employers only because these employees either make known their intention to testify or do testify in workers' compensation proceedings. Randolph's termination under review does not come within the reaches policywise of Labor Code section 132a.

---

[2]In relevant part, rule 5.26 provides:

". . . In computing the period of probation, the following shall be excluded: . . .

"a) The entire period of any absence or leave of absence of over seven calendar days, except vacation and time off for overtime. . . ."

Randolph actually began working as an ambulance attendant on an acting basis on September 14, 1974. Following his termination as an ambulance attendant on May 29, 1975, he thereafter worked as such an attendant in an overtime capacity on an acting basis for approximately 60 hours until July 2, 1975. Moreover, according to Randolph, he worked the equivalent of approximately four months in overtime work during his employment as an ambulance attendant.

Randolph was terminated because on April 4, 1975, he violated normal operating procedures by contacting a hospital other than the one to which he had been assigned and from which he had received orders for the handling of a particular patient and because he lied to the second hospital about the receipt of such orders. In addition, among other things, Randolph's potential in paramedic work was evaluated as comparatively poor.

[3]The opening paragraph of this section reads: "It is the declared policy of this state that there should not be discrimination against workers who are injured in the course and scope of their employment. . . ."

■ Randolph's first two contentions, though, merit more consideration. Los Angeles City Charter section 109, subdivision (c), states in pertinent part: "The candidate thus appointed shall be employed on probation for a period to be fixed by said rules, *not exceeding six months. . . .*" (Italics added.) Randolph argues that this charter provision places an absolute ceiling of six months upon the overall length of the probationary period and therefore the board was without power to enlarge it by rule.

We disagree. The charter provision expressly states that the probationary period is "to be fixed by said rules" and city charter section 101 authorizes respondent board to make, among other things, rules to carry out the purposes of the civil service article. Section 101, in our view, authorizes the board to define by rule the six-month probationary period and extending this period for absences and leaves of absence of over seven calendar days (with exceptions immaterial at this point) is not unreasonable in view of the purpose of the probationary period, which is to provide management with a reasonable opportunity to observe and evaluate an employee's performance on the job before according him or her the status of a permanent employee. (See *Wiles* v. *State Personnel Board,* 19 Cal.2d 344, 347-348 [121 P.2d 673]; *Waters* v. *Civil Service Board,* 133 Cal.App.2d 733, 736 [284 P.2d 919].)

■ We now turn to Randolph's remaining primary contention that rule 5.26 is unconstitutional. This contention focuses upon the alleged arbitrary nature of its exclusion from those absences from work that extend the probationary period of only vacation time and time off for overtime. Randolph concedes, however, that a classification reasonably related to the objective of the regulation under review is constitutional. (See *Reed* v. *Reed* (1971) 404 U.S. 71, 75-76 [30 L.Ed.2d 225, 229, 92 S.Ct. 251]; *McGowan* v. *Maryland* (1961) 366 U.S. 420, 425 [6 L.Ed.2d 393, 399, 81 S.Ct. 1101].) This classification is so related. The city controls both the taking of vacation and compensatory overtime.[4] It does not control other

---

[4]Los Angeles City Administrative Code section 4.250, subdivision (a), provides in relevant part, as follows regarding vacations: "Each officer or board or other appointing authority shall assign vacations and may establish and maintain a vacation schedule for each year, giving due regard in each case to the request of the employee, subject, however, to the right of such appointing authority to plan work under his, or its, control and to approve and assign vacations when the employee can be reasonably spared. . . ."

Section 4.138.2, subdivision (e), of the same Code, in pertinent part, reads with respect

authorized absences from work such as those that occur by reason of industrial injuries, as here. The six-month probationary period—the time necessary for observance and evaluation of new employees—cannot be unreasonably reduced by vacation time and compensatory overtime. It may be, however, so reduced in other situations.[5]

Randolph's further complaints against the system under which he was demoted, as a probationary employee, from ambulance attendant to ambulance driver, do not rise to a constitutional level. Since the same system is applied to all employees, no discrimination was involved in applying the system to Randolph. The city charter specifies six months as the general duration of the probationary period of employment instead of the actual time worked by the employee in his classification. The latter measure is subject to abuse by management through the making of preferential work assignments. The former is, therefore, the more reasonable. (Cf. *Broyles* v. *State Personnel Board,* 42 Cal.App.2d 303, 307 [108 P.2d 714].) Likewise, there is nothing unreasonable in the exclusion under rule 5.26 of the entire period of any absence or leave of absence from work of over seven calendar days rather than simply excluding working days—that is the days on which the particular employee would have worked.[6] Excluding the entire period of absence

to compensatory overtime: "(e) Time Off For Overtime. Time off for overtime worked shall be allowed at such time as is requested by the civilian ambulance employee subject to the approval of the Chief Engineer. Such time shall be taken within one (1) year after such overtime was worked, or within such period as extended by the Council, otherwise, it shall be deemed waived and lost. If a civilian ambulance employee is not allowed to take time off for overtime within one (1) year after such overtime was worked because he cannot be spared due to pressure of departmental business, or abnormal workload, the Chief Engineer shall report such fact to the Council, including the reasons why such overtime was not taken within one (1) year, and the Chief Engineer shall recommend either cash payment therefor or an extension of the period for an additional one (1) year. The Council may extend such period for not exceeding one (1) additional year or authorize cash payment therefor. The action of Council thereon shall constitute full authority for the Controller to approve the payroll on which the compensation for time off appears or to honor a separate demand for payment in cash. The Chief Engineer shall furnish the Council with a bimonthly report showing the total amount of all accumulated overtime which has not been used."

[5]For example, under Los Angeles City Administrative Code section 4.104, subdivision (a), certification of the total temporary disability of an employee may be handled both with respect to its commencement and in regard to its termination by an authorized physician or surgeon.

[6]In this connection we note that the manual of operations of the fire department (personnel procedures/medical section .01) requires an injured off-duty employee to report at the earliest time his physician will allow him regardless of his work schedule. Randolph, as an ambulance attendant, worked 24-hour shifts, but he did not work as often as an 8-hour and 5-day week employee would have.

from work simplifies the work that must be done in applying the rule and such economy in time and effort is not an insignificant consideration in a city having-as many employees as Los Angeles does.

The judgment denying the writ of mandate is affirmed.

Allport, Acting P. J., and Potter, J., concurred.