[L.A. No. 30876. Nov. 21, 1978.]

JUDSON STEEL CORPORATION, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD
and RALPH MAESE, Respondents.

COUNSEL

Zonni, Ginocchio & Taylor and Ben F. Taylor for Petitioner.

Charles Lawrence Swezey, Philip M. Miyamoto, Thomas J. McBirnie, Raymond G. Agnew and Stanley S. Lifton for Respondents.

OPINION

**TOBRINER, J.**—This case presents the issue whether an employer who terminates an employee's seniority rights, and, ultimately, his employment, because of the employee's absence from his job as the result of an industrial injury, has engaged in unlawful discrimination within the meaning of Labor Code section 132a. In 1972 the Legislature amended section 132a to provide that "It is the declared policy of this state that there should not be discrimination against workers who are injured in the course and scope of their employment."[1] In the instant case, the Workers'

---

[1] Section 132a provides in full: "It is the declared policy of this state that there should not be discrimination against workers who are injured in the course and scope of their employment.

"Any employer who discharges, or threatens to discharge, or in any manner discriminates against any employee because the latter has filed or made known his

Compensation Appeals Board concluded that the employer violated this statutory mandate by revoking the employee's seniority rights. The employer now seeks review of the board's decision, contending that the prevailing collective bargaining agreement compelled the revocation of the employee's seniority rights, and thus that substantial evidence does not support the board's decision. Finding the employer's contentions meritless, we affirm the board's decision.

In 1973 petitioner Judson Steel Corporation employed applicant Ralph A. Maese as a crane operator. On January 18, 1974, while carrying a box down a wet ramp, Maese slipped and injured his leg and back. He reported the injury and, for several months thereafter, received medical treatment provided by his employer's insurer. In April 1974 he applied for workers' compensation benefits for his injuries.

On April 19, 1975, on direction of his treating physician, Maese returned to work. Two days later, Judson laid off Maese. Judson claims that a clause of the union contract resulted in the elimination of Maese's seniority and the ensuing termination of his job. The clause provides that "the continuous service of an employee and his or her seniority status shall be terminated . . . [w]hen an employee has not performed any work for the Company for twelve (12) consecutive months as a result of . . . illness or injury."[2] Claiming that his termination was the result of

intention to file an application with the appeals board, or because the employee has received a rating, award or settlement, or, because the employee testified or made known his intentions to testify in any matter relating to the appeals board, is guilty of a misdemeanor and subject to the provisions of Section 4553.

"Any insurance carrier who advises, directs, or threatens an insured under penalty of cancellation or a raise in premium or for any other reason, to discharge an employee because the latter has filed or made known his intention to file an application with the appeals board, or because the employee has received a rating, award, or settlement, is guilty of a misdemeanor and subject to the provisions of Section 4553.

"Proceedings under this section for increased compensation as provided in Section 4553 are to be instituted by filing an appropriate petition with the appeals board, but such proceedings may not be commenced more than one year from the discriminatory act or date of termination of the employee. The appeals board is vested with full power, authority, and jurisdiction to try and determine finally all the matters specified in this section subject only to judicial review."

Section 4553 provides in pertinent part that "The amount of compensation otherwise recoverable shall be increased one-half where the employee is injured by reason of the serious and willful misconduct of any of the following: [¶] (a) The employer, or his managing representative. . . . [¶] But such increase of award shall in no event exceed ten thousand dollars ($10,000); together with costs and expenses incident to procurement of such award not to exceed two hundred fifty dollars ($250)."

[2]Although the contract in question became effective by its own terms on June 1, 1975, more than one month after Maese's termination, the parties have conceded the contract's

discrimination in violation of section 132a, Maese filed a petition for an increased award of compensation on that ground.[3]

Añtone M. Rezendes, union business agent, testified at the hearings on Maese's petition that when a Judson employee was injured on the job, Judson and the union could mutually extend the 12-month grace period for absences due to injury, thereby preserving an injured employee's seniority. According to Rezendes, "No. 1, [the injured employee] should notify the company with a doctor slip, tell the company that he may be off another six months as an example. . . . And then the company would notify us by mail stating that we are agreeing to go over the one year period. . . . And then we acknowledge the letter and that's it. There is no problem." Indeed, if he were advised that the absent employee was injured on the job, Rezendes emphasized that he would "want to know why [the employee] is not being kept on the seniority list if he got hurt."

Applicant Maese testified that he "was third in seniority there at work." Nevertheless, following Maese's return to work his shop superintendent Daniel Cortez "called me to the office and he told me that I was laid off because I lost my seniority and everything . . . because of the contract. . . . The contract reads after twelve months not at work you are out of work." Cortez corroborated Maese's testimony: other employees were laid off "because there was not enough work at that time for the whole crew"; Maese's seniority, however, was such that "had he not been off work for the twelve months he probably would not have been laid off." Despite his knowledge that Maese "was off work because of an accident which occurred at Judson Steel," Cortez laid off Maese because Maese "lost seniority automatically according to the contract."

applicability to the present case.

Section 17 of the contract provides, in pertinent part: "Seniority [¶] (A) . . . The continuous service and seniority status of an employee shall not be affected or interrupted as a result of layoffs, injury, illness, leaves of absence, or other cause not due to the voluntary act or fault of the employee; however, the continuous service of an employee and his or her seniority status shall be terminated for any of the following reasons, unless the Company and the Union, by agreement in writing, determine otherwise: [¶]. . . . (6) When an employee has not performed any work for the Company for twelve (12) consecutive months as a result of layoff by the Company or as a result of illness or injury, it being understood that, by mutual agreement between The Company and the Union, the aforementioned twelve (12) consecutive month period may be extended in cases of compensable illness and/or injury."

[3]On December 19, 1975, the workers' compensation judge approved a joint compromise and release settling Maese's claim for disability benefits, without prejudice to Maese's discrimination petition. That settlement is not before us.

On November 4, 1976, the workers' compensation judge found that Judson has made no attempt to extend Maese's 12-month grace period. Moreover, Judson "[was] not in any way compelled to terminate [Maese's] seniority after his period of temporary disability." As the judge explained, "Even under the terms of the union contract under which [Judson] purport[s] to act, it is patent that the most casual inquiry by an employer concerned at all for the welfare of [its] injured employee would have disclosed a situation where the union would have agreed to an extension of the twelve-month limitation period involved. . . . [¶] It appears . . . that the defendant employer has endeavored to use a provision in a union contract, which provision was placed there as a shield to protect the working man, as a sword to attack the very working man for whose benefit the provision was placed." The judge concluded that Maese had been "without doubt . . . discriminated against and prejudiced solely as the result of an injury which arose out of and occurred in the course of his employment," and accordingly increased Maese's compensation by one-half.

The Workers' Compensation Appeals Board denied reconsideration. The board held that "[a]lthough . . . there is no evidence that the applicant lost his seniority solely because of the filing of a workers' compensation claim, this is not the criterion provided for by Labor Code Section 132[a]. . . . Here the applicant was penalized solely because he missed more than twelve months of work due to an industrial injury. Accordingly, the penalty that was imposed upon the applicant was one that occurred under circumstances prohibited by Labor Code Section 132[a]."

■ Our review of an award by the Workers' Compensation Appeals Board is confined to the determination whether, under applicable principles of law, the award is supported by substantial evidence. (*LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432]; Lab. Code, § 5952, subd. (d).) As Labor Code section 5953 provides, "The findings and conclusions of the appeals board on questions of fact are conclusive and final and are not subject to review. Such questions of fact shall include ultimate facts and the findings and conclusions of the appeals board." Thus if the board's findings " 'are supported by inferences which may fairly be drawn from evidence even though the evidence is susceptible of opposing inferences, the reviewing court will not disturb the award.' " (*Riskin* v. *Ind. Acc. Com.* (1943) 23 Cal.2d 248, 254 [144 P.2d 16].)

The board in the present case found that, contrary to petitioner's contention, the union contract in question did not require petitioner to lay off Maese because of his absence from work. As the board correctly held, the undisputed evidence establishes "that the union and [petitioner] have consistently interpreted the applicable contractual provisions as providing for the employer and the union to agree to extend seniority." Petitioner offered no evidence to contravert the union official's testimony that it was "standard procedure" between petitioner and the union to extend time absent from work without loss of seniority in cases of compensable illness or injury.[4] Yet despite the fact that petitioner was aware of Maese's injury through its provision of medical care to Maese, as the board found, petitioner "did not try to seek an agreement with the union and it had no reason to believe that such an attempt would be futile. . . . This then is not a situation in which the employer made a bona fide effort to extend applicant's seniority and the union had refused to agree. Instead the employer did not even make an attempt and by failing to do so has permitted applicant to be penalized solely because of the amount of time lost from work."

Substantial evidence thus clearly supports the board's finding that petitioner was not compelled to terminate applicant's seniority rights, and instead eschewed its own standard procedure for safeguarding absent employees' accumulated seniority.[5] On the basis of applicant's showing that but for his industrial injury and forced absence he would not have been laid off, and in light of petitioner's specious attempt to defend the termination on the ground of the union contract, the board could reasonably infer that petitioner discriminated against applicant in violation of section 132a.

[4]As Antone Rezendes stated: "[I]f a man is injured or sick or hurt on the job, whatever the case may be, the company, and the union's okay can extend it by mutual agreement between the company and the union. *The only thing the company has to do is notify us,* if we are aware of what is going on, send us a letter, and then we would okay it. . . . No. 1, we don't know who is sick and who is injured or nothing *until the company notifies us.* When the company notifies the fact that this man is injured and they would like to extend to any time, no problem. Put it in writing, send it to us, and we will acknowledge it." (Italics added.)

[5]Moreover, it is clear in any event that an employer may not defend a discriminatory employment practice, proscribed by section 132a, on the basis of the provisions of a collective bargaining agreement, for a union may no more bargain away its members' statutory rights against discrimination under the workers' compensation laws than it may bargain away its members' statutory rights against, for example, sexual or racial discrimination. As the court held in *Robinson* v. *Lorillard Corp.* (4th Cir. 1971) 444 F.2d 791, 799 [21 A.L.R.Fed. 453], cert. den. 404 U.S. 1006 [30 L.Ed.2d 655, 92 S.Ct. 573]: "The rights assured by Title VII are not rights which can be bargained away—either by a union, by an employer, or by both acting in concert."

Petitioner argues first, however, that the board's decision misinterprets the clear language of section 132a. Petitioner concedes that section 132a declares a broad general policy condemning discrimination against workers who are injured in the course of their employment. Petitioner contends, however, that the section explicitly specifies those activities for which an employer may not penalize an employee. Thus, an employer may not discriminate against an employee for filing or making known his intention to file an application with the appeals board; receiving a rating, award or settlement; or testifying or making known his intention to testify in any matter relating to the board. Because petitioner did not discharge, threaten to discharge, or in any manner discriminate against applicant Maese for engaging in any of the enumerated protected activities, petitioner urges that the board's finding of discrimination under section 132a cannot stand.

Prior to 1972, section 132a provided in relevant part that "Any employer who discharges, or threatens to discharge, or in any other manner discriminates against any employee because the latter has filed or made known his intention to file an application or complaint with the appeals board, or because the employee has testified or made known an intention to testify in any investigation or proceeding held by the appeals board, is guilty of a misdemeanor." In 1972, however, the Legislature amended section 132a not only to provide for criminal sanctions and the payment of a penalty under Labor Code section 4553, but, more importantly, to declare broadly the policy of California "that there should not be discrimination against workers who are injured in the course and scope of their employment." (Stats. 1972, ch. 874, § 1, p. 1545.)

The board in the instant case concluded that, by amending section 132a, the Legislature intended to change the prior law which singled out certain discriminatory acts for condemnation and to declare a general policy in favor of preventing all discrimination against injured employees.[6] "Consequently," as the board explained, "those situations in which an employee is penalized solely because he was injured on the job or had to lose time from work solely because of a work

[6]The board correctly presumed that the change in legislative language was intended to produce a change in result, for " 'it would seem that any essential change in the phraseology of a statutory provision would indicate an intention on the part of the legislature to change the meaning of such provision rather than interpret it.' (*Young* v. *Three for One Oil Royalties,* 1 Cal.(2d) 639, 646 [36 Pac.(2d) 1065].)" (*Estate of Todd* (1941) 17 Cal.2d 270, 274-275 [109 P.2d 913]. See also *Clements* v. *T. R. Bechtel Co.* (1954) 43 Cal.2d 227, 232-233 [273 P.2d 5]; *People* v. *Valentine* (1946) 28 Cal.2d 121, 142 [169 P.2d 1].)

injury (rather than for example, situations in which the employer reasonably believes that the employee's injury prevents him from being able to do his job in an appropriate manner) are within the scope of Labor Code Section 132[a]."

Although section 132a specifically provides sanctions against "[a]ny employer who discharges, or threatens to discharge" an employee, as the board in the instant case noted, the provisions of the statute are not limited to those actions. Section 132a further prohibits employers "in any manner [to] discriminat[e]" against industrially injured employees; the section thus refers to other ways in which an employer may unlawfully penalize an employee. Since the evidence establishes without question that loss of seniority adversely affected applicant Maese, the board properly found that loss of seniority operated as a penalty within the scope of discrimination prohibited by section 132a.

Petitioner secondly argues that if the board follows this reasoning to the logical extreme, "in spite of any economic considerations an employee who sustains an injury on the job is entitled to a mandatory reinstatement, otherwise the employer faces the penalty that may be imposed by [section] 132a." Without expressing any opinion as to the availability to applicant Maese of remedies other than the increased compensation provided by section 4553, we emphasize that our present holding in no way mandates that an employer retain all employees who sustain injuries on the job. In the instant case it is undisputed both that Maese, despite his industrial injury, remained competent to perform his job and that Maese's former position was open upon his return. Section 132a does not compel an employer to ignore the realities of doing business by "reemploying" unqualified employees or employees for whom positions are no longer available.[7]

---

[7]Petitioner relies on *Randolph* v. *City of Los Angeles* (1977) 67 Cal.App.3d 201 [136 Cal.Rptr. 543] for the conclusion that it has not discriminated against applicant Maese. In *Randolph* an employee was absent from work for 16 days as a result of industrial injuries, and, pursuant to rule 5.26 of the city's board of civil service commissioners, his probationary period was accordingly extended. Rule 5.26 provides in relevant part, ". . . In computing the period of probation, the following shall be excluded: . . . [¶] (a) The entire period of any absence . . . of over seven calendar days, except vacation and time off for over-time. . . ." The court rejected the employee's claim that rule 5.26 discriminated against employees injured industrially, reasoning that only those activities enumerated in section 132a provided grounds for a claim of discrimination. (67 Cal.App.3d 201, 204.) *Randolph* involves the recognition by the court that employers be able to test employees' performance over a reasonable probationary period on the job and is thus distinguishable from the instant case. We disapprove, however, the language in *Randolph* limiting the application of section 132a. (67 Cal.App.3d at p. 204.)

Finally, petitioner argues that section 132a, together with section 4553, provides for the imposition of a "penalty" and therefore must be strictly construed and cautiously applied. We note, first, that although one function of section 132a may be to deter employers from discriminating against industrially injured employees, the statute also serves a remedial function, by providing some compensation to the aggrieved worker for discrimination incurred as the result of his injury. ■ Nevertheless, even if we were to assume that section 132a envisages the imposition of a penalty, section 3202 of the Labor Code enjoins us to construe the workers' compensation laws "liberally . . . with the purpose of extending their benefits for the protection of persons injured in the course of their employment." (See *Flores* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 171, 176 [113 Cal.Rptr. 217, 520 P.2d 1033].) We have held heretofore that the rule of liberal construction applies to all aspects of the workers' compensation law, including "penal" provisions. (*Kerley* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223, 227 [93 Cal.Rptr. 192, 481 P.2d 200]; see also *Davison* v. *Industrial Acc. Com.* (1966) 241 Cal.App.2d 15, 17-18 [50 Cal.Rptr. 76].) Thus we uphold the board's conclusion in the present case that an employer who discriminates against a worker injured in the course and scope of employment is subject to payment of the increased compensation prescribed in section 4553. ■ ■ By so interpreting section 132a we will not only encourage compensation for injured workers, but also secure compliance with the workers' compensation laws.[8]

■ While the ultimate interpretation of a statute is an exercise of the judicial power (*Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 753, 757 [151 P.2d 233, 155 A.L.R. 405]), when an administrative agency is charged with enforcing a particular statute, its interpretation of the statute will be accorded great respect by the courts "and will be followed if not clearly erroneous. [Citations.]" (*Bodinson Mfg. Co.* v. *California E.*

---

[8]We need not address petitioner's conclusory argument that in its interpretation of section 132a the board has violated the exclusive jurisdiction of the National Labor Relations Board. We stated in *United Farm Workers Organizing Committee* v. *Superior Court* (1971) 4 Cal.3d 556, 564 [94 Cal.Rptr. 263, 483 P.2d 1215], that "the bare assertion by an interested party that certain conduct is within the scope of the [National Labor Relations] Act is obviously insufficient to oust a state court of jurisdiction." Petitioner in the instant case has in fact only barely asserted that a conflict exists between section 132a and "federal law." Thus we cannot conduct "[t]he critical inquiry . . . whether the controversy presented to the state court is identical to . . . that which could have been, but was not, presented to the Labor Board," in which case the state's "exercise of jurisdiction necessarily [would involve] a risk of interference with the unfair labor practice jurisdiction of the Board." (*Sears, Roebuck and Co.* v. *San Diego County District Council* (1978) 436 U.S. 180, 197 [56 L.Ed.2d 209, 225, 98 S.Ct. 1745, 1757-1758].)

*Com.* (1941) 17 Cal.2d 321, 325-326 [109 P.2d 935].) In the present case · the Workers' Compensation Appeals Board has interpreted section 132a as expressing a policy opposing *all* discrimination against workers based solely on their having been injured in the course of employment. ▮ In light of our rule that the object which a statute seeks to achieve and the evil which it seeks to prevent are of prime consideration in the statute's interpretation (*Freedland* v. *Greco* (1955) 45 Cal.2d 462, 467 [289 P.2d 463]), we uphold the board's conclusion: The policy of protection which the workers' compensation laws declare can only be effectuated if an employer may not discharge an employee because of the employee's absence from his job as the consequence of an injury sustained in the course and scope of employment.

The award is affirmed.

Bird, C. J., Mosk, J., and Newman, J., concurred.

**RICHARDSON, J.**—I respectfully dissent. In affirming the award of increased compensation under Labor Code section 132a, the majority errs in two distinct respects: (1) Contrary to the majority, section 132a does not authorize such an award for acts of discrimination not specifically mentioned in that section, and (2) in any event, the employer's exercise of contractual rights specifically conferred under a union contract freely negotiated in favor of union members cannot reasonably and simultaneously be considered an act of discrimination which would justify a penal award of increased compensation to a union member.

Section 132a announces a general state policy "that there should not be discrimination against workers who are injured in the course and scope of their employment." The section immediately follows the foregoing language with a description of the types of acts for which an award of increased compensation may be made, namely, discrimination "against any employee because the latter has filed or made known his intention to file an application with the appeals board, or because the employee has received a rating, award or settlement, or, because the employee testified or made known his intentions to testify in any matter relating to the appeals board . . . ." In summary, section 132a prohibits discrimination against an employee who, in various specified ways, has sought redress before the appeals board. The section clearly was intended to assure that an employee would not be penalized by his employer merely because he exercised his legal right to invoke appeals board procedure.

In the present case, it is undisputed that employee Maese was terminated by Judson Steel Corporation because of his lengthy absence from work, and not because of any attempt by him to claim workers' compensation benefits. Therefore, assuming that Judson's conduct in terminating Maese was somehow wrongful, nevertheless, that conduct would not form the basis for the special penalties provided in section 132a. As stated in a recent case (now disapproved by the majority), ". . . the discrimination, prohibited and penalized by section 132a, involves . . . threatening or taking punitive action of any kind against industrially injured employees *because they avail themselves of their rights under the Workers' Compensation Act* . . . . Randolph's termination under review [for absence from work due to industrial injury] does not come within the reaches policywise of Labor Code section 132a." (Italics added; *Randolph v. City of Los Angeles* (1977) 67 Cal.App.3d 201, 204 [136 Cal.Rptr. 543].)

In any event, it seems obvious to me that Judson's conduct in this case reasonably should not be characterized as "discrimination," even were we to accept the majority's faulty premise that section 132a and its penal award provisions apply to every kind of employer discrimination, and not only those acts specified in that section. As noted by the majority, the union contract with Judson provided that, unless otherwise mutually agreed between the union and Judson, an employee's continuous service and seniority status "shall be terminated" when the employee has failed to perform services for the employer for 12 consecutive months as a result of layoff, illness or injury. Employee Maese, of course, was fully bound by the terms and conditions of this agreement negotiated on his behalf by a union which presumably represented his interests. (See *Chavez v. Sargent* (1959) 52 Cal.2d 162, 197 [339 P.2d 801].)

It is undisputed that Judson terminated Maese by exercising its contractual right to do so under the foregoing provision. How then does the majority reach its conclusion that Maese's termination was "discriminatory"? Evidently that conclusion is based solely upon the fact that "petitioner [employer] was not *compelled* to terminate applicant's seniority rights, and instead eschewed its own standard procedure for safeguarding absent employees' accumulated seniority." (Ante, p. 665, italics added.)

The foregoing legal consequence does not follow from the fact. First, the majority's assertion that Judson was not contractually *compelled* to fire Maese is wholly beside the point. Judson had a contractual *right* to terminate any employee who was absent for more than one year. The

exercise of a right validly conferred by a contract freely negotiated between parties cannot reasonably be construed subsequently as a *discriminatory* act. Second, given Judson's contractual right of termination, it is wholly immaterial that on some prior unspecified occasions for good reasons Judson and the union may have mutually agreed to extend the 12-month period. The union contract expressly contemplates just such extensions by *mutual* agreement. Judson's failure to reach such an agreement in Maese's case was a *contractually privileged* right and, accordingly, could not form the basis for a claim of discrimination under section 132a. (In fact, the record discloses that Judson's inaction was attributable *to Maese,* who never requested either his employer or his union to reach a mutual agreement extending the 12-month period.)

In my view, the majority unfairly and arbitrarily imposes a substantial penalty upon Judson for doing no more than exercising its perfectly valid contractual rights. I find such a result wholly unprecedented, and would annul the board's decision.

Clark, J., and Manuel, J., concurred.