[No. B010325. Second Dist., Div. Two. Dec. 2, 1985.]

VERNA D. JORDAN, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
GENERAL TELEPHONE COMPANY, Respondents.

**COUNSEL**

Drasin, Sparagna, Polan, Kessler & McNulty and Lawrence Drasin for Petitioner.

Merle C. Rabine as Amicus Curiae on behalf of Petitioner.

Richard W. Younkin, William B. Donohoe, Alvin R. Barrett, Maier & Rogers and William J. Rogers for Respondents.

**OPINION**

**COMPTON, J.**—Verna Dea Jordan (petitioner) alleging that her employer General Telephone Co., Inc. (respondent) had discriminated against her in violation of Labor Code section 132a[1] petitioned the Workers' Compensation Appeals Board (Board) for the various forms of relief therein provided. The Board found that respondent employer had not violated section 132a. We agree.

We initially denied the petition for review. Subsequently the Supreme Court transferred the matter to this court with instructions to issue the writ of review and calendar the matter before the court. Our attention was directed to a number of cases, the principal and controlling one being *Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658 [150 Cal.Rptr. 250, 586 P.2d 564]. We have dutifully complied and have deter-

---

[1]Labor Code section 132a provides in part: "(1) Any employer who discharges, or threatens to discharge, or in any manner discriminates against any employee because he or she has filed or made known his or her intention to file an application for adjudication with the appeals board, or because the employee has received a rating, award or settlement, is guilty of a misdemeanor and the employee's compensation shall be increased by one-half, but in no event more than ten thousand dollars ($10,000), together with costs and expenses not in excess of two hundred fifty dollars ($250). Any such employee shall also be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer."

All further section references herein shall be to the Labor Code unless otherwise indicated.

mined that our original denial was correct and that the Board's decision was proper.

■ Our review of the decision of the Board is, of course, confined to a determination of whether, under the relevant law, the decision is supported by substantial evidence. (*Judson Steel Corp.* v. *Workers' Comp. Appeals Bd., supra; LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627 [83 Cal.Rptr. 208, 463 P.2d 432].)

On January 16, 1982, applicant sustained orthopedic and psychiatric injury arising out of and in the course of her employment as a telephone directory assistance operator. She continued working intermittently until September 2, 1982, whereupon she felt unable to work because of pain from the injury. On September 16, 1982, after having exhausted her sick leave and vacation credits, she requested and received from General a six month leave of absence. In March 1983, she requested and was granted a second leave of absence through September 17, 1983; and in August 1983 she requested and received a third leave of absence through March 17, 1984. In February 1984, petitioner received an award for temporary total disability.

When she requested a fourth leave of absence in that same month, respondent advised her by letter that pursuant to article XXIV[2] of the collective bargaining agreement governing her position, she was not entitled to a further leave of absence and unless she returned to work by March 17, 1984, she would be terminated. When petitioner did not return to work, her employment was terminated effective March 17, 1984, 18 months after her last day of work.

In the meantime petitioner, on March 12, 1984, five days earlier had filed her application for benefits pursuant to section 132a. At this writing petitioner has not applied for rehire or recall.

Mr. Greenhow, respondent's Labor Relations Manager, testified that there is no distinction between industrial and nonindustrial medical leaves of absence; after exhaustion of vacation and sick leave credits medical

---

[2]Article XXIV of the collective bargaining agreement between General and the Communications Workers of America at the time in question provided in part as follows: ". . . 1.2 Regular Employees will be granted a leave of absence without pay, service requirements permitting, for a period up to six calendar months. . . . 1.3 An employee who has been granted a leave of absence and is unable to return to work at the end of the leave of absence may have an additional leave of absence not to exceed six months. 1.4 If the employee is unable to return to work due to illness at the end of the second leave of absence period, a third leave of absence not to exceed six months will be granted upon certification by the Company Medical Director."

leaves of absence may be granted for six months and extended for two additional six month periods, for a total of eighteen months; and if the employee is unable to return to work after eighteen months' leave of absence, the employment is terminated and the terminated employee has no right to rehire. Applicant's termination was handled the same way as any other termination where medical leave of absence had expired; and Mr. Greenhow knows of no exception to this termination policy in the 14 years he has served with General.

Mr. Greenhow also testified that although an employee terminated pursuant to the 18-month leave of absence rule has no right to rehire, such employee is eligible for rehire if a position for which the employee is qualified becomes open; terminated employees who have been off work for work-related medical problems have a rehire advantage over employees off work for non-work related medical problems, and both categories of employees having an advantage over the general public.

He further testified that on rehire an employee's seniority is computed on the aggregate amount of time worked both before and after any break in service. This would be true even in the case of an employee on leave of absence, i.e., the period of absence would be deducted from length of service.

In *Judson, supra,* 22 Cal.3d 658, the employee after less than a year's employment sustained an industrial injury. Shortly thereafter he applied for workers' compensation benefits. Slightly over a year later he returned to work. Subsequent to his return he was laid off because of a lack of available work.

According to a provision in the collective bargaining agreement, the employee's continued absence in excess of 12 months resulted in loss of seniority. That provision, however, was subject to extension of the 12 month period by mutual agreement between the union and the employer.

In *Judson* there was no extension and there was evidence that had the employee retained his seniority as it existed at the time of injury, he would have survived the layoff when the availability of work declined after his return to work.

The Supreme Court in reaching its conclusion that the employee's layoff was a violation of section 132a, stressed the requirement of giving deference to the decision of the Board.

There the Board's decision, which was approved by the court, was that section 132a prohibited employers from wrongfully penalizing an employee

in any way, " '. . . solely because he was injured on the job or had to lose time from work solely because of a work injury (*rather than for example, situations in which the employer reasonably believes that the employee's injury prevents him from being able to do his job in an appropriate manner*) . . . .' " (*Judson, supra,* 22 Cal.3d at pp. 666-667; italics added.)

Thus it was held that, under the circumstances, the loss of seniority was an unlawful penalty which violated section 132a. The court explained, and we think that this is the key to an understanding of *Judson,* that the employee was, despite his injury, *competent to perform his job and that his former job was open upon his return.*

The court clearly stated on page 667 ". . . our present holding in no way mandates that an employer retain all employees who sustain injuries on the job. . . . Section 132a does not compel an employer to ignore the realities of doing business by 'reemploying' unqualified employees or employees for whom positions are no longer available." (Fn. omitted.)

■ Turning now to the case at bench it is our opinion that petitioner's attempt to invoke section 132a as interpreted in *Judson* is simply premature. It is undisputed that petitioner has received all of the usual benefits attendant to a temporary total disability. It is further undisputed that petitioner is not presently competent to perform her regular job and in view of the length of time for which she has been unable to perform her regular job it is not reasonably possible to predict when, if ever, she will be able to return.

If and when petitioner regains the ability to perform her regular job and seeks reinstatement, respondent's conduct at that time can be tested against section 132a and the precepts of *Judson.*

It is neither realistic nor reasonable to require that an employer create a class of absentee employees, outside the ambit of the collective bargaining agreement, by keeping positions "open" for an indefinite period of time on the possibility that their former occupants may recover from an industrial injury.

Here the collective bargaining agreement appears to have been more than reasonable in providing for 18 months absence over and above vacation and sick time to cover "temporary" physical disability and illness.

In summary, there was substantial evidence to support the Board's decision that in terminating petitioner's employee status, under these circumstances, respondent did not violate section 132a.

The decision is affirmed.

Roth, P. J., concurred.

**GATES, J.,** Concurring.—I find the present case disquieting. Whether due to inability or mere unwillingness, neither party has attempted to offer any pragmatic explanation for its actions. J. R. Greenhow, respondent's Labor Relations Manager "testified that if the applicant had not [been] terminated *there would have been no hardship to the company, only inconsistency.*" (Italics added.) One is therefore left to wonder why a company employing some 26,000 workers and "approximately 1,000 to 1,100 directory assistance operators, the majority of whom are in Southern California" would deem it necessary or appropriate to place in economic limbo those injured in its service merely to attain paper symmetry.

Appellant, in her turn, has failed to point to any loss she presently has suffered, or will necessarily suffer, by her reason of her "termination." In fact, she did not dispute Greenhow's testimony that "the company does not have to recall those who were terminated for exceeding leave of absence privileges, *but no one who has ever applied for recall has been denied.*" (Italics added.)

In sum, apparently the parties have neither achieved nor forfeited anything of practical value or consequence to date. Furthermore, of course, how one chooses to characterize any possible future transformation of this appellant, who is presently incapacitated and receiving disability payments, to her former role of productive and salaried worker, appears to be no more than an exercise in preferential semantics. The court in *Judson Steel Corp. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, at page 667 [150 Cal.Rptr. 250, 586 P.2d 264], utilized such terms as "*reinstatement*" and "*reemploying*" (italics added) when treating with the plight of an injured employee who had been *permanently* discharged despite his full recovery.

Rare, indeed, should be the case where one party is rewarded and another punished by reason of some hypothetical future event that may or may not ever come to pass. Consequently, I join my colleagues in concluding that until such time as appellant is able to demonstrate she has sustained some actual detriment as the result of respondent's conduct, the Board did not err in declining to require it to pay her a $10,000 penalty.