[No. B148898. Second Dist., Div. Four. Mar. 8, 2002.]

PAUL WINTER, Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

## COUNSEL

Diane Marchant for Plaintiff and Appellant.

Rockard J. Delgadillo, City Attorney, Cheryl Ward, Assistant City Attorney, and Matthew C. St. George, Deputy City Attorney, for Defendants and Respondents.

## OPINION

**EPSTEIN, J.**—In this case, we conclude that the probationary period for a Los Angeles police officer was not extended by the period of time he was assigned home while a complaint against him was investigated. Since his probationary period expired before he was formally terminated, he was entitled to a board of rights proceeding. We reverse the order of the trial court.

## FACTUAL AND PROCEDURAL SUMMARY

Paul Winter was sworn in as a Los Angeles police officer on December 26, 1995. Under section 109(c) of the Los Angeles City Charter then in effect,[1] his term of probation was 18 months. Based on his hire date, Winter's probationary term ordinarily would have expired on June 25, 1997 if no absences occurred to extend the probationary period.

In March 1996, while off duty, Winter and a female neighbor went to a bar in Long Beach where she became intoxicated. They returned to Winter's apartment. The neighbor later reported to the Long Beach Police Department that Winter had raped her.

A personnel complaint was initiated against Winter. After a review of the complaint, Winter's commanding officer, Captain Richard Roupoli, found the complaint "Not Resolved," and sent it up the chain of command for review. The chief of police found the complaint sustained, and directed Captain Roupoli to present the charge to Officer Winter with an opportunity to respond.

On May 15, 1997, Captain Roupoli served Winter with "Notice of Proposed Disciplinary Action," reflecting an intent to discharge him. Captain Roupoli assigned Winter to his home and directed him not to act as a police officer. He was instructed to be at home between the hours of 8:00 a.m. and 5:00 p.m., Monday through Friday. Captain Roupoli did not relieve Winter of his gun, badge, or police identification.

Winter filed a response to the proposed disciplinary action, which resulted in a supplemental investigation. Upon review of the new investigation, Captain Roupoli again concluded there was insufficient evidence to sustain the charge.

The matter was sent up the chain of command for review. On June 24, 1997, one day before Winter's 18-month probationary period ordinarily would have concluded, Winter was served with a "Notice of Termination." That notice, which was signed by the chief of police, reflected an amended charge, that "On or about March 29, 1996, while off-duty, you conducted yourself in a manner which discredited and compromised the integrity of yourself and the Department."

---

[1] A new and renumbered Los Angeles City Charter was adopted on July 1, 2000. All Charter references in this case are to the former Los Angeles City Charter.

On June 26, 1997, Winter turned in his city-issued equipment. He also filed an administrative appeal.

A "liberty interest" hearing convened on December 29, 1997. Winter claimed he was entitled to a board of rights hearing because the department had not filed his termination notice with the board of civil service commissioners until November 25, 1997, after his 18-month probationary period had ended. The hearing was continued to obtain an opinion on this issue.

The hearing reconvened in March 1999, and again in July 1999. The hearing officer found that any untimeliness in the filing of the notice did not affect Winter's opportunity to refute the charges and hence was not relevant. After reviewing the evidence, the hearing officer recommended to the chief of police that the charge be sustained and that the decision which led to Winter's termination be upheld.

In September 1999, the chief of police adopted that decision, terminating Winter's employment retroactive to June 24, 1997. Winter sought judicial review of the decision by petition for writ of mandate. (Code Civ. Proc., § 1085.) He argued in the trial court, as he does on appeal, that his discharge was void because the notice of termination was not filed with the civil service commission until after his probationary period had ended. As he was no longer a probationary employee, he claimed, he could not be summarily discharged without a board of rights hearing.

The city's position was that the probationary period had been extended beyond its original June 25, 1997 date pursuant to Los Angeles County Civil Service Rules, rule 5.26 (rule 5.26), which excludes from the computation of the probationary period the entire period of absences in excess of seven calendar days. According to the city, Winter became "absent" within the meaning of rule 5.26 when he was assigned home on May 15, 1997, and never returned to duty.

The trial court denied relief, concluding that Winter's absence from work extended his probationary period, and the notice of termination therefore was filed prior to the expiration of Winter's probation. Winter appeals from this order.

## DISCUSSION

The sole issue before this court is whether appellant Winter was a probationary officer at the time of his termination. During the time period

relevant to this case, Los Angeles City Charter section 109(c) authorized the city to employ police officers on probation for a period of 18 months. "At or before the expiration of the probationary period, the appointing authority of the department or office in which the candidate is employed may terminate him upon assigning in writing the reasons therefor to said board. Unless he is thus terminated during the probationary period his appointment shall be deemed complete." (Charter, § 109(c).)

In *Zeron v. City of Los Angeles* (1998) 67 Cal.App.4th 639 [79 Cal.Rptr.2d 130], which also involved the termination of a Los Angeles police officer, the court explained the distinction between a probationary officer and a tenured officer in the context of termination: "A tenured officer may only be discharged for cause, after having received a full hearing. [Citation.] In the City, such a board of rights hearing is held before a three-person panel. . . . The burden is on the department to prove its case by a preponderance of the evidence. After the hearing, the chief of police may impose a lesser penalty than suggested by the panel but not a greater one. [Citation.] [¶] On the other hand, a probationary officer may be terminated without cause. [Citation.] However, if the reason or reasons behind the discharge would tend to besmirch the officer's reputation and negatively impact on future employment, the officer is entitled to a 'liberty interest' hearing to clear his or her name. [Citation.] Although the procedural rules vary from city to city [citation], a 'liberty interest' hearing involving a police officer is generally held before a single hearing officer, whose recommendation may be adopted, ignored, or modified by the chief of police. [Citation.]" (*Id.* at pp. 641-642.)

Charter section 101 states that the board of civil service commissioners is to make rules to carry out the charter's civil service provisions. Charter section 109(c) provides that the probationary period not to exceed 18 months is "to be fixed by said rules . . . ." In accordance with this authority, rule 5.26 provides: "The probationary period for persons appointed in the class of Police Officer shall be eighteen months of service in that class . . . . In computing the period of probation, the following shall be excluded: [¶] (a) The entire period or periods of any absence or absences whether on leave or not, except vacation and time off for overtime, if such period or periods, in the aggregate, exceed seven calendar days."

Winter was served with notice of termination on June 24, 1997, one day before the expiration of the 18 months which ordinarily would make up his probationary period. But section 109(c) of the Charter required the city to give written notice of the termination and "the reasons therefor" to the civil service commission. (See *Schrader v. City of Los Angeles* (1937) 19 Cal.App.2d 332, 333-334 [65 P.2d 374].) The city did so on November 25,

1997, well after the conclusion of the 18-month probationary period. For this reason, Winter argues that at the time of his termination he was a tenured officer, not a probationary officer, and hence entitled to a board of rights hearing.

The city's position is that Winter was absent from his service, beginning May 15, 1997, when he was ordered home. The city claims his absence for more than seven calendar days brings him within rule 5.26, which excludes from the probationary period the entire period of absences, if those absences total more than seven days. Since his absence began before the end of his probationary period and he never returned to service, the city argues Winter never completed his probation. Under this approach, Winter was terminated while a probationary employee, despite the fact that notice of his termination was given to the commission more than 18 months after his service began. If this is correct, the liberty interest hearing that Winter received was sufficient.

The question, then, is whether Winter was "absent" within the meaning of rule 5.26 when he was assigned home. "Assigned home" is not a category explained in the Los Angeles Police Department Manual (Manual), nor is it included in the list of formal abbreviations in the official divisional time book abbreviations in section 705.40 of the Manual. The time sheet for the period in which Winter was assigned home shows him as "SD," which according to the city stands for "special detail." That abbreviation is not in the list of formal abbreviations either.

The parties agree that Winter's assignment home actually constituted placement on inactive duty. As explained in section 3/728.27 of the Manual: "After determining that a probationary officer should be recommended for termination for disciplinary reasons, . . . the commanding officer shall prepare an Intradepartmental Correspondence Form 15.2, requesting approval to place the officer on inactive duty. . . ." When the probationary officer is placed on inactive duty, his commanding officer is required to inform him or her "of the conditions of inactive duty in accordance with Section 3/840.20."

Manual section 3/840.20 provides, "When an employee is assigned to inactive duty, the commanding officer or watch commander who makes the assignment shall [¶] Take immediate action necessary to ensure the completion of a proper investigation. [¶] Cause necessary reports to be completed and forwarded. [¶] When circumstances indicate, obtain all Department property in possession of the concerned employee and deliver it to the

employee's commanding officer. [¶] The commanding officer making the assignment shall instruct the employee to [¶] Refrain from acting in an official capacity. [¶] Remain on-call at the designated place of inactive duty, OR [¶] Report at a given time and place when such information is available."

The evidence shows that once disciplinary action was contemplated against Winter, he was ordered by his commanding officer not to act as a police officer. He was instructed to be at home between the hours of 8:00 a.m. and 5:00 p.m., Monday through Friday. Winter was not relieved of his gun, badge, or police identification, but such action is within the discretion of the commanding officer under section 3/840.20 of the Manual. All this is consistent with the description of "inactive duty" in the Manual.

The Manual does not specify whether time on inactive duty constitutes an absence within the meaning of rule 5.26, but it does make clear that an officer on inactive duty is not free of job duties. He or she is prohibited from acting in an official capacity, yet is required to remain on call at a designated place of inactive duty, or to report at a given time and place. (Manual, § 3/840.20.) Thus, Winter was required to be at home from 8:00 a.m. to 5:00 p.m., Monday through Friday. Since his presence at this designated place each day constituted performance of his assignment, it is reasonable to conclude that the time on this assignment was not an "absence" within the meaning of rule 5.26.[2]

Although the Manual does not state whether inactive duty constitutes an absence within the meaning of rule 5.26, a December 6, 1993 personnel memorandum from the city's human resources bureau addresses the point: "Special Order No. 11 dated May 25, 1993, established that inactive duty status constituted an 'absence' as defined by Civil Service Commission Rule 5.26 for the purpose of adjusting the probationary period of entry-level police officers. The Personnel Department has determined that inactive duty status does not qualify as an 'absence' and has prohibited the Department from extending the probationary period under these circumstances. [¶] Effective immediately, commanding officers shall not extend the probationary period of an entry-level police officer for time spent on inactive duty. The probationary period shall continue to be extended for all other absences including those due to illness or injury, pregnancy, military leave, voluntary leave of absence, or suspension. Restricted duty status resulting from either

---

[2]Another indication that Winter's days on inactive duty were not absences is that he was carried on the time sheets as being on "special detail" and was paid from the time he was assigned home until he was terminated.

an on-duty or off-duty injury or illness also constitutes an 'absence' for the purpose of extending the probationary period."

■ "Interpretation and application of the statute, by administrative agencies charged with its implementation, although not determinative, is an aid to construction that is entitled to weight unless it is clearly erroneous." (*Organization of Deputy Sheriffs v. County of San Mateo* (1975) 48 Cal.App.3d 331, 341 [122 Cal.Rptr. 210].) We find nothing "clearly erroneous" in this personnel memorandum.

■ The city argues that the personnel memorandum was superseded by *Riveros v. City of Los Angeles* (1996) 41 Cal.App.4th 1342 [49 Cal.Rptr.2d 238]. We disagree. In *Riveros*, the officer was charged with improper conduct and served a 22-day suspension prior to the expiration of his probationary period. The court held that the officer's days on suspension constituted absences which extended the period of his probation under rule 5.26. (41 Cal.App.4th at p. 1352.) But Officer Riveros was suspended (and even took a job in another city during the period of his suspension). The personnel memorandum expressly agrees with the conclusion of the *Riveros* court that a suspension constitutes an absence within the meaning of rule 5.26. The court had no need to decide whether being placed on inactive duty also constituted an absence within the meaning of rule 5.26. Nothing in *Riveros* supersedes the personnel memorandum which addressed that question.

We recognize the purpose of a probationary period, "which is to provide management with a reasonable opportunity to observe and evaluate an employee's performance on the job before according him or her the status of a permanent employee." (*Randolph v. City of Los Angeles* (1977) 67 Cal.App.3d 201, 205 [136 Cal.Rptr. 543], disapproved on another ground in *Judson Steel Corp. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 667, fn. 7 [150 Cal.Rptr. 250, 586 P.2d 564].) The city's opportunity to observe job performance by Winter was shortened by 41 days—from the time he was placed on inactive duty on May 15, 1997. But the city was not forced to allow Winter to become a tenured employee under those circumstances. It was in the city's control to timely notify the board of civil service commissioners of its decision to terminate Winter, prior to the expiration of Winter's probationary period. It did not do so.

Because Winter's probation was not extended by his placement on inactive duty, it expired on June 25, 1997. He was no longer a probationary employee on November 25, 1997, when his termination was completed by

service of written notice with reasons therefor to the board of civil service commissioners. For this reason, he was a tenured officer entitled to a board of rights hearing. The trial court erred in denying his petition for writ of mandate.

## DISPOSITION

The order is reversed. Appellant is to have his costs on appeal.

Vogel (C. S.), P. J., and Curry, J., concurred.