[Civ. No. 56640. Second Dist., Div. Five. Aug. 13, 1980.]

COUNTY OF SANTA BARBARA, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
ROBERT BOUSLAUGH, Respondents.

COUNSEL

William G. Lorenzetti, Bralley, Bentley & Dickinson and Charles M. Bentley for Petitioner.

Daniel E. Henderson, Jr., and Henderson, Rogers, Sheffield, Henderson & Rafferty for Respondents.

OPINION

KAUS, P. J.—Petitioner County of Santa Barbara (County) contends: (1) no substantial evidence supports the finding by respondent Workers' Compensation Appeals Board (Board) that County discriminated against respondent Robert Bouslaugh, in violation of Labor Code section 132a;[1] (2) the Board erred in finding Bouslaugh entitled to vocational rehabilitation pursuant to Labor Code section 139.5 without first referring the issue to the Rehabilitation Bureau of the Division of Industrial Accidents (of the Department of Industrial Relations) as provided by California Administrative Code, title 8, chapter 4.5, subchapter 1, section 10007; and (3) the Board erred in failing to issue specific findings on the issues of industrial injury and permanent disability. Reconsideration was denied. We find substantial evidence supports the award of increased benefits pursuant to Labor Code section 132a. We conclude, however, that the Board did err in the procedure followed in finding Bouslaugh entitled to vocational rehabilitation benefits and in failing to make certain findings of fact.

---

[1]Henceforth, unless otherwise noted, all statutory references are to the Labor Code.

I.

Bouslaugh claims multiple industrial injuries in the course of his employment as a deputy sheriff for County: (1) a specific spinal injury on November 1, 1971; (2) a specific spinal injury in December of 1973; (3) a specific injury to the head and spine on January 31, 1977; (4) cumulative trauma injury to his spine during his entire period of employment for County from November 1, 1969, through September 30, 1977 (the date Bouslaugh last worked for County); and (5) cumulative trauma hearing injury. County admits the specific injuries of 1971, and 1977, but denies the cumulative injuries and the 1973 specific injury.

On February 6, 1978, the workers' compensation judge (WCJ) found Bouslaugh to be totally temporarily disabled from the 1977 injury from October 1, 1977, through February 1, 1978, and continuing. Bouslaugh, a peace officer, was entitled to be paid compensation measured by his salary as a peace officer. (Lab. Code, § 4850; *Hawthorn* v. *City of Beverly Hills* (1952) 111 Cal.App.2d 723, 728-729 [245 P.2d 352].)

II.

LABOR CODE SECTION 132a CLAIM

On December 7, 1977, after Bouslaugh had advised County that it appeared unlikely that his injuries would permit him to return to work, he was "demoted" from the position of "Deputy Sheriff II" to "Deputy Sheriff I." This demotion, reassignment, retransfer, reclassification or whatever it was, was the vehicle for reducing the amount of compensation Bouslaugh was receiving under section 4850.

■ County's position is that there was no technical demotion, but that Bouslaugh was simply reassigned because his disability precluded his functioning in the position of deputy sheriff II. Therefore, no impermissible discrimination under section 132a was involved.

The position of deputy sheriff II was created by the County in 1972. It is not a classified position, but rather an assignment to certain specialized duties. It does, however, involve a 5 percent pay increase so long as the deputy holds the assignment. The deputy assigned as a deputy sheriff II may be transferred to another position where (1) he is promoted to a higher duty, (2) he requests reassignment, (3) he performs unsatisfactorily, and (4) whenever, in the judgment of the sheriff,

"it is in the best interests" of the department that reassignment be made.

In November 1977—just before Bouslaugh's demotion, the department adopted a policy that any employee likely to be certified as unfit for an extended period, would be transferred to the "unassigned for medical reasons" unit. Any deputy II thus transferred becomes a deputy I and the deputy II position is available for his replacement, if any. It was under that policy that Bouslaugh became a deputy I.

The WCJ received much testimony concerning the practices of the department with respect to disabled deputies and, in particular, heard a great deal about one Deputy Larry Gold who, though apparently quite disabled, had continued to receive his deputy II salary, albeit before the November 1977 policy went into effect.

A great deal of that testimony is beside the point. The issue is not whether Bouslaugh was discriminated against vis-à-vis another similarly situated deputy.[2] Rather, as we see it, the question is much more simple: was Bouslaugh the victim of discrimination prohibited by section 132a as authoritatively explained and interpreted in *Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658 [150 Cal.Rptr. 250, 586 P.2d 564]. We think that the finding to that effect must, under familiar principles, be upheld. (*Id.*, pp. 664-665.)

The WCJ found specifically: "[A] reduction in status, as well as pay post-injury, entirely because of the disability caused by the injury, is a discrimination protected against by Labor Code Section 132(a) [*sic*]. ..." We entirely agree. In *Judson Steel* the Board's finding was that "the applicant was penalized solely because he missed more than twelve months of work due to an industrial injury. Accordingly the penalty that was imposed upon the applicant was one that occurred under circumstances prohibited by Labor Code Section 132 [a]." (*Id.*, p. 664.)

We freely admit that here, as in *Judson Steel*, there is no evidence that the employer violated any of the specific prohibitions of section 132a. In other words, nothing suggests that the County penalized Bouslaugh for availing himself of the remedies of the workers' compensation

[2]Nor does it matter that, in the words of the WCJ the "Department seems to be designed to uniformly discriminate against Deputy II Sheriffs, and possibly others, irrespective of whether or not the disability arose from industrial or nonindustrial causes."

law. Yet here, as in *Judson Steel*, the action taken against the employee fits comfortably into the preamble on the basis of which *Judson Steel* was decided: "It is the declared policy of this state that there should not be discrimination against workers who are injured in the course and scope of their employment." The November 1977 order of the department made such discrimination a matter of policy even though, as noted (see fn. 2 *ante*) it treated all disabilities—industrial and nonindustrial—alike.

## III.

### VOCATIONAL REHABILITATION BENEFITS

The issue of vocational rehabilitation was first placed in issue by the WCJ at the hearing of February 21, 1979. In his decision of March 6, 1979, the WCJ found that Bouslaugh was "in need of and interested in rehabilitation at the expense" of County. The WCJ accordingly awarded Bouslaugh temporary disability until his rehabilitation was completed.

County correctly asserts that the WCJ erred in awarding any rehabilitation benefits without referring the matter to the rehabilitation unit of the Division of Industrial Accidents as required by California Administrative Code, title 8, chapter 4.5, subchapter 1, article 12. (Rehab. Regulations.)

By enacting Labor Code section 139.5 the Legislature delegated to the Administrative Director of the Division of Industrial Accidents the duty to establish the administrative process to regulate the mandatory provision of vocational rehabilitation to qualified workers. To this end the administrative director has established the rehabilitation unit (Bureau) within the Division of Industrial Accidents.

The question of vocational rehabilitation was first raised at a hearing before the WCJ. At the time of the WCJ's decision section 10007 of the Rehab. Regulations provided: "All matters regarding rehabilitation plans and programs shall be initially submitted to the Bureau except those arising in cases before a [judge] of the Workers' Compensation Appeals Board where injury is in issue, or where the question of need for rehabilitation first arises during the course of a proceeding on other issues. [¶] *Where the question of need for vocational rehabilitation first arises in a proceeding before a [judge] of the Appeals Board, this*

*question shall be referred by the [judge] to the Bureau for its recommendation."* (Italics added.) The WCJ erred in failing to make the required referral to the Bureau.[3]

## IV.

### FAILURE TO MAKE FINDINGS OF FACT

■ County's final contention is that the WCJ erred in failing to make findings of fact on the questions of injury, permanent disability and apportionment. (Lab. Code, § 5313.) Relying upon *Tangye v. Henry C. Beck & Co.* (Board en banc opinion, 1978) 43 Cal.Comp.Cases 3, the WCJ reasoned that he was not required to make such findings since Bouslaugh was awarded temporary disability related to vocational rehabilitation.

Irrespective of how the Supreme Court decides the *Webb* and *San Diego Transit Corp.* cases pending before it and the possible impact upon *Tangye, Tangye* refers only to the deferral of the issues of permanent disability and apportionment. *Tangye* does not excuse the WCJ's failure to make findings of fact on the other disputed questions. Further, on the issues of permanent disability and apportionment thereof the Board has held that "a permanent disability rating may properly be established while an applicant is seeking rehabilitation benefits *if rehabilitation benefits are not actually being received* or if neither party objects to the issue of permanent disability being tried and determined pending rehabilitation." (*Harklerod v. Young's Market Company* (Board en banc opinion, 1979) 44 Cal.Comp.Cases 561, 562. Italics added.) As Bouslaugh was not receiving rehabilitation benefits at the time of the WCJ's decision, the WCJ was accordingly not required to delay findings on permanent disability and apportionment.

## V.

### SUMMARY AND DISPOSITION

The award of increased benefits to Bouslaugh under Labor Code section 132a is affirmed. The findings on rehabilitation benefits are

---

[3]The date temporary disability, if any, should commence for purposes of vocational rehabilitation is a question we therefore need not reach. Accordingly, we are not required to comment upon this issue which is presently before the California Supreme Court in *Webb v. Workers' Comp. Appeal Bd.* (S.F. 24094, hg. granted Nov. 28, 1979) and *San Diego Transit Corp. v. Workers' Comp. Appeal Bd.* (L.A. 31193, hg. granted Nov. 28, 1979).

annulled and remanded to the Board for compliance with Rehab. Regulations section 10007. The matter is also remanded to the Board to make the other necessary findings.

Stephens, J., and Hastings, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied October 8, 1980.