[No. C003485. Third Dist. Sept. 13, 1988.]

DON L. STEMLER, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
DEPARTMENT OF TRANSPORTATION, Respondents.

[Opinion certified for partial publication.*]

* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part I.

**COUNSEL**

Airola, Williams & Dietrich, Airola, Williams, Dietrich & Otis and Lowell A. Airola for Petitioner.

Drasin, Sparagna, Polan & Sparagna and Larry Drasin as Amici Curiae on behalf of Petitioner.

Richard A. Krimen, Arthur Hershenson, Fernando DaSilva, Robert W. Daneri, Gary J. Lee, Don E. Clark, Christopher W. Waddell and Edmund K. Brehl for Respondents.

**OPINION**

**MARLER, J.**—Petitioner Don L. Stemler appeals the decision of the Workers' Compensation Appeals Board (the WCAB). After the workers' compensation judge entered an award for petitioner, respondents State of California, Department of Transportation (Cal Trans) and State Compensation Insurance Fund, Adjusting Agency, filed petitions for reconsideration. Upon reconsideration, the WCAB reversed the award on two issues. Petitioner contends the WCAB erred in such reversal (1) in refusing to award the petitioner future medical treatment, and (2) in failing to find that by depriving petitioner of a safety incentive bonus solely because of time lost due to petitioner's work related injury, Cal Trans illegally discriminated against petitioner in violation of Labor Code section 132a. The WCAB's findings and award on reconsideration are reversed in part and affirmed in part for the reasons which follow.

On June 4, 1985, while employed as a heavy equipment operator for Cal Trans, petitioner injured his back, shoulder, neck and left leg when the grader he was driving went over the embankment and down a hill. Since then he has missed work off and on due to his injuries.

Petitioner received disability advances after his injury. In April of 1987, two physicians reevaluated his medical condition. The physicians disagreed

on petitioner's need for future medical treatment. The workers' compensation judge awarded future medical treatment. The WCAB reversed this award on reconsideration.

The agreement between Cal Trans and the California State Employees Association, petitioner's union, provided for a safety incentive award program for certain classes of employees, including petitioner's class. Employees qualifying for the program received an annual cash bonus of $50.[1] Petitioner received notice that due to his time-lost work injury he would not receive the bonus.[2] Petitioner was not charged with a preventable vehicular accident, which would have disqualified him for the award.

Petitioner filed a petition for increased compensation under Labor Code section 132a, contending that the denial of the $50 bonus constituted discrimination prohibited by that statute. The workers' compensation judge awarded increased compensation. The WCAB reversed the award.

---

[1] The pertinent provisions of the safety incentive award program are as follows: "10.4 Safety Incentive Award—CalTrans

"a. CSEA and the State agree that the safety of Highway Maintenance Workers and associated classes is a matter of mutual concern. In an effort to encourage these individuals to work safely, the State agrees that all permanent, full-time employees in the classes listed in Section b. below who:

"(1) Have completed one year of continuous full-time employment as of their birthday without sustaining a work-related injury or illness resulting in a loss of work time, and

"(2) Have not been charged with a preventable vehicular accident while operating State equipment, shall receive a cash award of $50 in the month following their birthday.

"b. The following classes in the Department of Transportation are included in the Safety Incentive Program:

" . . . . . . . . . . . . . . . . . .

"c. Because the Safety Incentive Award Program is designed to encourage individual employees to work safely while engaged in highway maintenance and associated work,

"(1) Employees in the listed classes who accept a Training and Development assignment to a class not listed in Section b. shall not be eligible to receive the Safety Incentive Award, and

"(2) Employees in classes not listed in Section b. who accept a Training and Development assignment to one of the listed classes are included in the Safety Incentive Program and shall be eligible to receive an award in accordance with paragraph a. above.

"d. Employees who are denied the cash award because they were charged with preventable vehicular accident while operating State equipment, may file a grievance under the Grievance and Arbitration provisions of this MOU up to and including the department head. Under no circumstances, however, may a dispute arising out of the preventable vehicular accident charge be appealed to the Department of Personnel Administration or be arbitrated.

"e. This Section shall be effective upon enactment of legislation which clearly exempts this provision from the definition of 'compensation' contained in Government Code Section 20022."

[2] Petitioner received a letter dated October 1, 1986, from Cal Trans, which read:

"I am sorry to inform you that due to your lost time injury accident on June 5, 1985 you are not eligible for the $50 bonus which other members of your work group will receive.

"A greater safety awareness in the future may prevent this type of accident from occurring and leave you happier, healthier and richer.

"I hope the next year will be an accident free year for you."

## DISCUSSION

### I*

. . . . . . . . . . . . . . . . . . . . .

### II

██ Petitioner's second, more complex contention is that the failure of Cal Trans to give him the $50 bonus constitutes illegal discrimination under Labor Code section 132a.

In 1972 the Legislature amended Labor Code section 132a and added the following general preamble: "It is the declared policy of this state that there should not be discrimination against workers who are injured in the course and scope of their employment." In *Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658 [150 Cal.Rptr. 250, 586 P.2d 564] the California Supreme Court held this change in the statute indicated the Legislature's intent to provide that the discriminatory acts prohibited by section 132a are not limited to those acts enumerated in the statute. (22 Cal.3d at p. 667.) Instead, the statute's prohibition is broader, encompassing other acts of discrimination. (*Ibid.*) The court did provide some parameters to the statute's application; the court limited the statute's scope by excluding actions necessitated by business realities. (*Id.,* at p. 667.) The court, however, explicitly did not exclude actions provided for in collective bargaining agreements from the scope of section 132a. "[F]or a union may no more bargain away its members' statutory rights against discrimination under the workers' compensation laws than it may bargain away its members' statutory rights against, for example, sexual or racial discrimination." (*Id.,* at p. 665, fn. 5.)

A further limitation expressed in *Judson Steel* is that the discriminatory act must be predicated upon the industrial injury. (22 Cal.3d at p. 665.) This court emphasized this required connection in *Leamon* v. *Workers' Comp. Appeals Bd.* (1987) 190 Cal.App.3d 1409, 1414-1415 [235 Cal.Rptr. 912], where it refused to find discrimination in the discharge of an employee because the evidence showed the employer had ample grounds for the discharge other than unexcused absences which were later found to be due to work injuries. Because the employer's actions were not related to the work injuries or time missed because of such injuries, there could be no discrimination prohibited under section 132a. Here, in contrast, the employer's action was "due to [petitioner's] lost time injury accident," so there is no question whether the necessary relation exists.

* See footnote, *ante,* page 577.

*Judson Steel* interprets section 132a as a broad prohibition against discrimination against industrially injured employees. Respondents argue the statute is inapplicable here because the safety incentive program was not only a part of the collective bargaining agreement, but was also applied evenhandedly. They argue petitioner was not singled out for discrimination; he simply did not qualify for the bonus because of his lost work time.

The argument that a policy adversely affecting employees injured on the job was not discriminatory because all similarly situated employees were treated the same failed in *County of Santa Barbara* v. *Workers' Comp. Appeals Bd.* (*Bouslaugh*) (1980) 109 Cal.App.3d 211 [167 Cal.Rptr. 65]. In *Bouslaugh* a deputy who was injured on the job and unable to return to work was demoted, causing a reduction in his disability compensation. The court rejected the argument that there was no discrimination because the deputy was treated the same as other deputies, finding that the issue was not whether the deputy was discriminated against vis-à-vis other similarly situated deputies, but whether he was a victim of prohibited discrimination. (*Bouslaugh, supra,* 109 Cal.App.3d at p. 215.) The court found a reduction in status and pay entirely because of disability caused by a work-related injury is prohibited discrimination. (*Ibid.*)

Because it denies a benefit to employees who miss work due to industrial injuries, the safety incentive program at issue here arguably falls within the prohibition of Labor Code section 132a as construed in *Judson Steel, supra,* 22 Cal.3d at page 667. However, we need not decide whether the program might constitute unlawful discrimination under Labor Code section 132a. The program was adopted pursuant to Government Code section 19994.20.[3] That section provides for the implementation of accident prevention incentive award programs whose purpose is "to reduce . . . the number of on-the-job injuries to, and the use of sick leave by, state employees."

Government Code section 19994.20 obviously contemplates that the Department of Personnel Administration (Department) shall have discretion to negotiate an appropriate accident prevention incentive award program. We do not think the safety incentive program at issue here transgresses that

---

[3] Government Code section 19994.20 reads as follows: "(a) The department, after consultation with the Office of Insurance and Risk Management in the Department of General Services, may meet and confer with representatives of the recognized employee organization for any appropriate unit pursuant to the State Employer-Employee Relations Act on the implementation of an accident prevention incentive award program covering employees in that unit. The purpose of the program shall be to reduce, through the cooperative effort of labor and management, the number of on-the-job injuries to, and the use of sick leave by, state employees.

(b) The department shall report to the Legislature annually on the success of any programs implemented pursuant to this section."

The "department" referred to above is the Department of Personnel Administration. (Gov. Code, § 19815.)

legislative grant of negotiating authority. Petitioner correctly points out that employees who lose time from work on account of injury or illness are not paid the bonus even when the injury or illness is not their fault. This observation, to have relevance, must concede that denial of a bonus to industrially injured employees who are at fault is within the purview of Government Code section 19994.20 and is permissible. This would allow differential treatment not only between industrially injured employees and those not injured, but also between those employees so injured who were at fault and those who were not, and those who lost work time and those who did not. The contention must be that withholding of a bonus from an employee injured without his fault who lost work time does not further the purposes of the statute to reduce on-the-job injuries and use of sick leave and thus should be proscribed by Labor Code section 132a. However, the Department could reasonably conclude that a partial "no fault" bonus incentive program was the only feasible way of accomplishing the purposes of the program. Given the modest size of the annual bonus ($50), the Department could conclude that the costs of adjudications of "fault" for employee illness or injury (which are apparently allowed under the program where vehicle accidents are at issue) would create further lost time and expense and eliminate the efficiencies the program was designed to achieve. Put differently, the Department could conclude that adjudications over employees' "fault" in causing injury or illness would likely eat up whatever benefits were otherwise produced by the $50 annual bonus. It follows that the incentive program is consistent with the enabling statute.

Thus, even assuming for purposes of argument the bonus incentive program violates Labor Code section 132a, upon the assumption section 132a generally prevents industrially injured employees from being treated less well than other employees, we think the program is authorized by Government Code section 19994.20. The latter statute deals only with state employees and their collective bargaining agreements and is therefore the more specific statute. It prevails in any conflict with Labor Code section 132a, because "it is . . . settled that when a special and a general statute are in conflict, the former controls. (Code Civ. Proc., § 1859.) ' "[T]he special act will be considered as an exception to the general statute whether it was passed before or after such general enactment." ' (*In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593]; accord, *People* v. *Gilbert* (1969) 1 Cal.3d 475, 479-480 [82 Cal.Rptr. 724, 462 P.2d 580], and cases cited.)" (*Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 420 [128 Cal.Rptr. 183, 546 P.2d 687].)

Since the safety incentive award program instituted by Cal Trans and Bargaining Unit 12 is authorized by Government Code section 19994.20, we need not meet the issue of the validity of a program such as the one here in the absence of an enabling statute.

DISPOSITION

The decision of the WCAB as to the denial of future medical care is reversed, and the decision as to the safety incentive award program is affirmed. The WCAB shall issue an order consistent with this opinion.

Sims, J., concurred.

SPARKS, Acting P. J.—Although I concur in the result arrived at by the majority, I reach the same destination as my colleagues by taking a different judicial route.

Without deciding the issue, the majority assumes that the denial of the incentive bonus award constitutes an unlawful discrimination under Labor Code section 132a. It then resolves the conflict between that statute and the statute authorizing the bonus, Government Code section 19994.20, by applying the rule that a special statute takes precedence over a conflicting general statute. As the majority sees it, Government Code section 19994.20 is the more specific statute because it deals only with state employees and their collective bargaining agreements. In my view, the majority's unspoken premise is flawed. These two disparate statutes do not deal with the same subject matter and consequently the special/general rule has no application here.

Code of Civil Procedure section 1859 directs that "[i]n the construction of a statute the intention of the legislature . . . is to be pursued, if possible; and when a general and particular provision are inconsistent, the latter is paramount to the former." Consequently, "where the same subject matter is covered by inconsistent provisions, one of which is special and the other general, the special one, whether or not enacted first, is an exception to the general statute and controls unless an intent to the contrary clearly appears." (*Warne* v. *Harkness* (1963) 60 Cal.2d 579, 588 [35 Cal.Rptr. 601, 387 P.2d 377].) But here the statutes do not deal with the same subject matter. One deals with discrimination by employers against industrially injured employees while the other authorizes accident reduction incentive programs to be included in memorandums of understanding negotiated between the Department of Personnel Administration and state employee organizations. The statute authorizing incentive programs says nothing about discrimination and can hardly be characterized as a more specific discrimination statute. The majority goes awry by assuming that when two disparate statutes conflict in their application the judicial task is to determine which of the two is the narrowest. But when the statutes are dissimilar and have unrelated purposes, it is meaningless to inquire which of the two is the more specific. The potential conflict between these disparate statutes must be resolved by other rules of statutory construction.

Code of Civil Procedure section 1858 mandates that "[i]n the construction of a statute . . . where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." We are thus enjoined, wherever possible, to reconcile seemingly conflicting or inconsistent provisions by reading all parts of a statute together and construing them to achieve harmony rather than holding that there is an irreconcilable inconsistency. (*Wemyss* v. *Superior Court* (1952) 38 Cal.2d 616, 621 [241 P.2d 525].) Our duty to harmonize statutes if reasonably possible applies even though the apparent inconsistencies appear in different codes. "In examining statutes that appear to conflict, we are guided by settled rules of statutory construction. The most fundamental of these rules is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. Statutes that are apparently in conflict should, if reasonably possible, be reconciled, even when the court interprets provisions in different codes . . . ." (*Walters* v. *Weed* (1988) 45 Cal.3d 1, 9 [246 Cal.Rptr. 5, 752 P.2d 443]; citations omitted.)

Labor Code section 132a was originally enacted as a criminal statute in 1941. (Stats. 1941, ch. 401, § 1, p. 1686.) In 1972, the Legislature amended the section to provide not only for criminal sanctions for unlawful discrimination but also for the payment of a penalty and at the same time to declare the broad policy of the state against discrimination toward industrially injured employees. (Stats. 1972, ch. 874, § 1, p. 1545.) In 1984, some six years after the decision in *Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658 [150 Cal.Rptr. 250, 586 P.2d 564], the Legislature enacted a new accident reduction incentive plan for state employees. (Stats. 1984, ch. 674, § 1, pp. 2472-2473.) Under the terms of the enabling statute, the Department of Personnel Administration may meet and confer with representatives of recognized employee organizations "on the implementation of an accident prevention incentive award program covering employees in that unit." (Gov. Code, § 19994.20, subd. (a).) The declared purpose of the program is "to reduce, through the cooperative effort of labor and management, the number of on-the-job injuries to, and the use of sick leave by, state employees." (*Ibid.*) This laudable purpose does not facially conflict with the "declared policy of this state that there should not be discrimination against workers who are injured in the course and scope of their employment." (Lab. Code, § 132a.) The Government Code provision seeks to minimize injuries to state employees as well as reduce sick leave absences by authorizing an "incentive award program" in the memorandum of understanding between the department and state employee organizations. The objective is not to penalize or discriminate against workers who are injured in the course and scope of their employment but is rather to provide incentives for averting accidents and the use of sick leave. Labor Code section 132a, on the other hand, seeks to prohibit, by the use of monetary and penal

sanctions, an employer from discharging or threatening to discharge, or in any other manner discriminating against an employee who seeks workers' compensation benefits. Thus Labor Code section 132a covers all the "ways in which an employer may unlawfully penalize an employee." (*Judson Steel Corp.* v. *Workers' Comp. Appeals Bd., supra,* 22 Cal.3d at p. 667.) A statutorily authorized incentive program, however, is not such a prohibited way of illegally penalizing a nonqualifying employee. An incentive award program, by its very nature, necessarily contemplates the conferring of some benefit upon employees who fulfill the terms of the program. But the program, far from being unlawful, has been expressly authorized by the Legislature. Consequently, the failure to earn such a benefit cannot be said to constitute the type of unlawful discrimination envisaged by the Labor Code.

The Legislature could not have intended that the statutorily authorized implementation of the accident reduction incentive program for "on-the-job injuries" would automatically subject the State of California to a penalty of upwards to $10,000 under Labor Code section 132a for every industrially injured state employee who did not qualify for the award. Nor could it have intended that state officers would commit crimes under Labor Code section 132a by implementing the incentive bonus program expressly authorized by statute. Given the express intent of the Legislature "to reduce, through the cooperative effort of labor and management, the number of on-the-job injuries to . . . state employees" by the "implementation of an accident prevention incentive award program" (Gov. Code, 19994.20, subd. (a)), I would harmonize the two statutes by holding that the granting or denial of an incentive award under Government Code section 19994.20 does not constitute an act of unlawful discrimination within the meaning of Labor Code section 132a.

A petition for a rehearing was denied October 11, 1988, and petitioner's application for review by the Supreme Court was denied January 19, 1989.