[No. B191064. Second Dist., Div. Six. Apr. 19, 2007.]

JOHN ANDERSEN, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, CITY OF SANTA
BARBARA et al., Respondents.

COUNSEL

Ghitterman, Ghitterman & Feld, Allàn S. Ghitterman, Russell R. Ghitterman and Benjamin P. Feld for Petitioner.

Goldman, Magdalin & Krikes and Rolla Norton, Jr., for Respondent City of Santa Barbara.

No appearance for Respondents Workers' Compensation Appeals Board and JT2 Integrated Resources.

OPINION

**COFFEE, J.**—John Andersen sustained industrial injuries while working for respondent City of Santa Barbara (City). Andersen filed a workers' compensation claim contending that City discriminated against him by forcing him to use vacation time rather than sick leave to obtain medical care for those injuries. (Lab. Code,[1] § 132a.) He also argued that the Workers' Compensation Appeals Board (Board) improperly applied the apportionment provisions of Senate Bill No. 899 (2003–2004 Reg. Sess.) (Senate Bill 899) retroactively, and no substantial evidence supports the opinion of the agreed medical examiner (AME) regarding apportionment. On April 6, 2006, Board concluded that City did not violate the antidiscrimination provisions of section 132a, and therefore, Andersen is not entitled to restoration of the vacation time he used for such medical appointments.

Andersen petitioned this court for a writ of review. We summarily denied this petition and Andersen sought review in our Supreme Court. His petition to the Supreme Court raised only the issue of whether City violated section 132a. The Supreme Court granted the petition, and transferred the matter back to this court with directions to vacate our summary denial and issue a writ of review to be heard on calendar. We have done so.

We now conclude that City violated section 132a by requiring Andersen to use his earned vacation time rather than sick leave to attend medical appointments to care for his industrial injuries. We also conclude that Board properly applied Senate Bill 899, and substantial evidence supports the apportionment opinion of the AME.

FACTS

While Andersen was employed as a finance supervisor for City, he developed pain in his elbows, wrists and hands. He filed a claim for workers' compensation. Dr. Morrison McDavid, an orthopedic surgeon, served as the AME. After conducting a medical examination and reviewing the other medical records in the case, Dr. McDavid opined that Andersen suffered from degenerative disks, ulnar neuropathy and carpal tunnel syndrome while working for City. Dr. McDavid concluded that roughly 70 percent of these permanent injuries were due to cumulative trauma at work, and 30 percent of the injuries were caused by nonindustrial factors. Later, Dr. McDavid revised the percentage of disability for his cervical disabilities upwards to 80 percent.

---

[1] All statutory references are to the Labor Code unless otherwise stated.

Andersen returned to modified work on May 25, 2004, but needed to obtain medical care for these injuries. Pursuant to ordinance and policy, City required him to use his earned vacation time rather than sick leave to attend the medical appointments he needed to care for these industrial injuries. Workers with nonindustrial injuries could use their sick leave for such matters. (Santa Barbara Mun. Code, § 3.08.220; memorandum of understanding (MOU) § 45.)

In applying for workers' compensation benefits, Andersen alleged that City discriminated against him, within the meaning of section 132a, by forcing him to use vacation time rather than sick leave, as nonindustrially injured employees were allowed to do. Board found that City did not illegally discriminate against him. Because local law did not require City to allow the use of sick leave for such medical appointments, the workers' compensation judge (WCJ) and Board concluded that Andersen was not entitled to have his vacation time restored for the hours he used to care for his industrial injuries.

Initially, the WCJ and Board determined there was no basis for further apportionment. In an amended ruling upon reconsideration, Board adjusted the permanent disability (PD) rating from 40 to 41 percent. In providing for PD, Board used the new rating schedule which was developed pursuant to Senate Bill 899. Andersen petitioned this court for a writ of review.

## DISCUSSION

### Standards of Review

### Questions of Fact

Our review is limited to a determination, based upon the entire record, whether Board acted without or in excess of its powers, whether the decision or award was unreasonable, and whether it was supported by substantial evidence. (§ 5952; *Department of Rehabilitation v. Workers' Comp. Appeals Bd.* (2003) 30 Cal.4th 1281, 1290 [135 Cal.Rptr.2d 665, 70 P.3d 1076] (*Lauher*).) The findings and conclusions of Board concerning questions of fact are final and conclusive; they are not subject to our review. (§ 5953.) Therefore, we may not superimpose our judgment concerning factual questions on the Board. (*Braewood Convalescent Hospital v. Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 159, 164 [193 Cal.Rptr. 157, 666 P.2d 14].) Questions of fact include ultimate facts and the finding and conclusions of Board. (§ 5953.) If, upon reading the entire record, there is any relevant evidence that " '. . . *a reasonable mind might accept as adequate to support a*

*conclusion . . .'* " we must accept it in support of Board's conclusions on factual issues. (*Braewood, supra,* at p. 164.) This includes any findings supported by inferences which " '. . . may fairly be drawn from evidence even though the evidence is susceptible of opposing inferences . . . .' " (*Judson Steel Corp. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 664 [150 Cal.Rptr. 250, 586 P.2d 564].)

### Statutory Interpretation

■ We independently interpret workers' compensation statutes to ascertain the intent of the Legislature and effectuate the purpose of the workers' compensation scheme. (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387–388 [20 Cal.Rptr.2d 523, 853 P.2d 978]; and see *Marsh v. Workers' Comp. Appeals Bd.* (2005) 130 Cal.App.4th 906, 914 [30 Cal.Rptr.3d 598].) " '. . . Interpreting or applying statutes to the facts should be consistent with the purpose of the statute and the statutory scheme as a whole.' " (*Marsh, supra,* at p. 914, citations omitted.) "We must also consider the consequences that will flow from a particular statutory interpretation which, when applied, will result in wise policy rather than mischief or absurdity." (*E & J Gallo Winery v. Workers' Comp. Appeals Bd.* (2005) 134 Cal.App.4th 1536, 1544 [37 Cal.Rptr.3d 208].)

We apply the usual, ordinary and plain meaning of a statute's words, and harmonize the various parts of the statute with the general tenor and scope of the statutory framework as a whole. (*Great Lakes Properties, Inc. v. City of El Segundo* (1977) 19 Cal.3d 152, 155–156 [137 Cal.Rptr. 154, 561 P.2d 244]; accord, *Honeywell v. Workers' Comp. Appeals Bd.* (2005) 35 Cal.4th 24, 34–35 [24 Cal.Rptr.3d 179, 105 P.3d 544].) Although we accord " ' "significant respect" ' " to Board's construction of worker's compensation statutes, we must annul any decision that is based on an interpretation which is clearly erroneous, unreasonable or inequitable. (*Lauher, supra,* 30 Cal.4th at p. 1290; accord, *Honeywell, supra,* at p. 34.)

### Conflict of Laws

■ Under the power expressly granted to it by the California Constitution, the Legislature has established a complete system of workers' compensation, which is a subject of statewide concern. (*Healy v. Industrial Acc. Com.* (1953) 41 Cal.2d 118, 122 [258 P.2d 1].) It is well settled that in workers' compensation matters, the general law is paramount. (*Ibid.*) The purpose of workers' compensation is to extend its benefits for the protection of persons

injured on the job. (§ 3202.) To carry out this purpose, we must liberally construe the Labor Code in favor of the injured worker. (*Healy, supra,* 41 Cal.2d at p. 122; *E & J Gallo Winery v. Workers' Comp. Appeals Bd., supra,* 134 Cal.App.4th at pp. 1544, 1552–1553; *Albillo v. Intermodal Container Services, Inc.* (2003) 114 Cal.App.4th 190, 200–201 [8 Cal.Rptr.3d 350].) This precept governs all aspects of workers' compensation, both factual and statutory. (*Arriaga v. County of Alameda* (1995) 9 Cal.4th 1055, 1065 [40 Cal.Rptr.2d 116, 892 P.2d 150].) If a provision may be construed to provide payment to an injured worker, it should be adopted even if another reasonable construction is possible. (*Ibid.*) Thus, if there is any conflict between municipal ordinances and the Labor Code, the latter must prevail. (*Healy, supra,* at pp. 121–122.) Unions may not bargain away such rights. (See *Judson Steel Corp. v. Workers' Comp. Appeals Bd., supra,* 22 Cal.3d at p. 665, fn. 5.)

### Section 132a, the Antidiscrimination Statute

Section 132a provides, in pertinent part, "[i]t is the declared policy of this state that there should not be discrimination against workers who are injured in the course and scope of their employment. [¶] (1) Any employer who . . . in any manner discriminates against any employee because he or she has filed . . . a claim for compensation with his or her employer or an application for adjudication, or because the employee has received a rating, award, or settlement, is guilty of a misdemeanor and the employee's compensation shall be increased by one-half, but in no event more than ten thousand dollars ($10,000), together with costs and expenses not in excess of two hundred fifty dollars ($250). Any such employee shall also be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer. . . . [¶] . . . [¶] (4) . . . The appeals board is vested with full power, authority, and jurisdiction to try and determine finally all matters specified in this section subject only to judicial review, except that the appeals board shall have no jurisdiction to try and determine a misdemeanor charge. The appeals board may refer and any worker may complain of suspected violations of the criminal misdemeanor provisions of this section to the Division of Labor Standards Enforcement, or directly to the office of the public prosecutor."

### Local Laws and Contract Provisions

██ City's Municipal Code provides that "[w]here sickness or injury is sustained in the course of employment with the City, such officer or employee shall be compensated under the provisions of the Workers' Compensation Insurance and Safety Act of the State and not under the provisions of this chapter . . . ." (Santa Barbara Mun. Code, § 3.08.220.)

City's MOU states that "a. The parties agree that Municipal Code Section 3.08.220 shall be amended to provide that general employees who sustain illness or injury arising out of and in the course of their City employment shall receive benefits equal to those mandated by the State of California . . . ." (MOU, § 59.) The MOU also provides that "[a]n employee may use sick leave for a medical appointment when it is not possible to arrange such appointment on non-work time subject to . . . [r]easonable advance notice . . . [and] supervisory approval . . . ." (MOU, § 45; see Santa Barbara Mun. Code, § 3.08.140 [on accrual of sick leave].) Section 59 of the MOU proclaims, however, "[t]his section shall not be construed to grant employees the use of sick leave benefits in lieu of or to supplement workers' compensation benefits provided herein or by State law."

City has construed the above provisions to require industrially injured workers to charge vacation time rather than sick leave when such workers need to attend medical appointments for their work-related injuries. But, City permits its workers to use sick leave to attend medical appointments for nonindustrial injuries. (MOU, § 45, subd. (c); see Santa Barbara Mun. Code, § 3.08.140 [on accrual of sick leave].)

Andersen contends City violated section 132a by forcing him to use vacation time rather than sick leave for this purpose, and he is entitled to an award pursuant to section 132a. We independently construe these statutory and contractual provisions according to the rules stated above. (Civ. Code, §§ 1636, 1639, 1641, 1642, 1644, 1647; Code Civ. Proc., §§ 1856–1862; *Pellandini v. Valadao* (2003) 113 Cal.App.4th 1315, 1319 [7 Cal.Rptr.3d 413].)

### Application of Section 132a

The antidiscrimination provisions of section 132a are not limited to protecting only its enumerated rights, such as workers' compensation ratings or awards. (See *Judson Steel Corp. v. Workers' Comp. Appeals Bd., supra*, 22 Cal.3d at p. 667; *Stemler v. Workers' Comp. Appeals Bd.* (1988) 204 Cal.App.3d 577, 580 [251 Cal.Rptr. 364].) An employer action that " 'in any manner . . . [discriminates]' " against an industrially injured employee to the detriment of his or her receipt or exercise of employment rights is compensable under section 132a. (*Judson, supra*, at p. 667 [loss of seniority]; accord, *Lauher, supra*, 30 Cal.4th at pp. 1299–1300; § 132a.) Section 132a precludes discrimination that detrimentally affects industrially injured workers in any significant way. (See *County of Santa Barbara v. Workers' Comp. Appeals Bd.*

(1980) 109 Cal.App.3d 211, 215–216 [167 Cal.Rptr. 65] [reduction in status or pay].) Discriminatory and detrimental actions taken by local government entities pursuant to a collective bargaining agreement are also protected under section 132a. (*Judson, supra,* at pp. 665, fn. 5, 667; *Stemler, supra,* at p. 580.)

Courts evaluate section 132a cases using the preponderance of the evidence standard. (*Lauher, supra,* 30 Cal.4th at p. 1298.) If the employee carries this burden, the burden shifts to the employer to establish an affirmative defense of a reasonable and legitimate business reason for such practice. (*Ibid.*)

Both sides rely on *Lauher* to support their positions. *Lauher* concerned a workers' compensation petition to recover penalties under section 132a because the applicant was charged vacation time and sick leave for attending medical appointments related to his disability. Crucial facts in *Lauher* are distinguishable from the instant case.

Even after Lauher had become permanent and stationary (P&S), he sought temporary disability indemnity (TDI). In addition, he sought nearly 200 hours of vacation time and sick leave for treatment of his injury, after the parties had stipulated he had become P&S with a PD. He asked for penalties pursuant to section 132a, arguing that his employer discriminated against him by not reimbursing him for the leave time.

Board granted Lauher's application and denied reconsideration. The Court of Appeal disagreed with Board and annulled the Board's decision. Our Supreme Court affirmed the decision of the Court of Appeal, denying Lauher the reimbursement he sought. Our high court explained that Lauher's employer did not single him out for disadvantageous treatment in the use of sick leave and vacation time based on the industrial nature of his injury. All workers with injuries or sickness had to use sick leave or vacation time to leave the office for medical treatment. (*Lauher, supra,* 30 Cal.4th at pp. 1300–1301.)[2] Moreover, he was not entitled to receive PD and temporary disability (TD) simultaneously.

Andersen established that City has a written, discriminatory policy which requires only industrially injured workers to use earned vacation time for

---

[2] Our Supreme Court first explained that Lauher was not entitled to receive both TDI and PD after he had become P&S and returned to work. (See *Lauher, supra,* at pp. 1291–1292.) The employer's obligation to pay TDI ceases when the injured employee returns to work, is able to return to work, or achieves P&S status. (*Id.* at pp. 1292–1293, 1297, 1300.) Lauher did not establish he had a legal right to receive TDI from his employer and retain his vacation time and sick leave. (*Id.* at pp. 1299–1300.) We are not presented with this issue here.

attending medical appointments, while nonindustrially injured workers could use sick leave for such appointments. (See MOU, §§ 45, 59; Santa Barbara Mun. Code, §§ 3.08.140, 3.08.220.) City admitted this, and did not establish a reasonable, legitimate business purpose for this discriminatory policy.

 City claims that because sick leave is a creature of local law and regulation, section 132a, which is a state law concerning workers' compensation, does not apply to it. City contends it may preclude its employees from using sick leave for medical appointments related to industrial injuries, forcing them to use it only for nonindustrial injuries and sickness. (See Gov. Code, § 21163, formerly § 21025.2 [permitting local entities to pass ordinances for sick leave].)[3] We disagree. Local government entities and unions may not create policies that discriminate against their industrially injured employees to their detriment, even if they have plenary power to provide sick leave. The creation and use of such policies contravene the mandate of section 132a. (See generally *Healy v. Industrial Acc. Com., supra,* 41 Cal.2d at pp. 121–122; *Judson Steel Corp. v. Workers' Comp. Appeals Bd., supra,* 22 Cal.3d at p. 665, fn. 5; also see *County of Santa Barbara v. Workers' Comp. Appeals Bd., supra,* 109 Cal.App.3d at pp. 215–216 [demotion of industrially injured deputy sheriff based on expectation that return to work was unlikely].)

City points to various Court of Appeal cases to support its position, but they are distinguishable. (*Patton v. Governing Board* (1978) 77 Cal.App.3d 495 [143 Cal.Rptr. 593] [no payment to local government employee for accumulated sick leave prior to commencement of disability retirement]; accord, *Campbell v. City of Monrovia* (1978) 84 Cal.App.3d 341 [148 Cal.Rptr. 679]; cf. *Marsille v. City of Santa Ana* (1976) 64 Cal.App.3d 764 [134 Cal.Rptr. 743] [similar but concerning statutory leave of absence prior to disability retirement under CalPERS (Public Employees' Retirement System)]; see also *Robertson v. City of Inglewood* (1978) 84 Cal.App.3d 400 [148 Cal.Rptr. 560] [fireman received leave of absence with full pay under § 4850 but not accumulated sick leave before disability retirement]; *Willis v. City of Garden Grove* (1979) 93 Cal.App.3d 208, 212–213 [155 Cal.Rptr. 493] [sick employee limited to specified option for receipt of accumulated sick leave before disability retirement]; accord, *Batters v. City of Santa Monica* (1980) 101 Cal.App.3d 595, 605–607 [161 Cal.Rptr. 728] [fireman receiving disability leave of absence pursuant to § 4850 not entitled to accumulate sick leave as well before disability retirement].)

---

[3] Former Government Code section 21025.2 provides, in pertinent part, that "[T]he retirement of a member [of the California Public Employees' Retirement System] who has been granted or is entitled to sick leave . . . shall not become effective until the expiration of such sick leave with compensation . . . unless the member applies for or consents to his retirement as of an earlier date. Sick leave shall be subject to the regular requirements of law and rules governing the use of sick leave."

■ The case before us does not concern payment for accumulated sick leave prior to disability retirement, statutory leave of absence with pay in lieu of sick leave, or payment of TD. This case concerns the use of ordinary sick leave by active, industrially injured employees for medical appointments. City has made the use of sick leave dependent solely on whether or not the worker is industrially or nonindustrially injured. Such disparate and detrimental treatment constitutes illegal discrimination in contravention of section 132a. (See *Healy v. Industrial Acc. Com., supra*, 41 Cal.2d at pp. 121–122; *Judson Steel Corp. v. Workers' Comp. Appeals Bd., supra*, 22 Cal.3d at p. 665, fn. 5.)

City could choose not to provide sick leave to any of its employees. But if City provides sick leave to its employees, it cannot refuse to permit its use for industrially related medical appointments when nonindustrially injured workers are not so restricted. Here, City permits nonindustrially injured persons to use sick leave for medical appointments but requires industrially injured persons to use earned vacation time.

In conclusion, City may not discriminate against active, industrially injured workers in the use of sick leave for medical appointments, as compared to nonindustrially injured workers. Such a policy contravenes section 132a.

*Apportionment*

*Retroactivity*

Senate Bill 899 was enacted as an urgency measure on April 19, 2004. Section 47 of Senate Bill 899 states, in pertinent part, "[t]he amendment, addition, or repeal of, any provision of law made by this act shall apply prospectively from the date of enactment of this act, regardless of the date of injury, *unless otherwise specified* . . . ." (Italics added.) Andersen contends that the provisions of Senate Bill 899 regarding apportionment do not apply here because Andersen's injuries preceded its enactment.

Andersen relies on *Green v. Workers' Comp. Appeals Bd.* (2005) 127 Cal.App.4th 1426 [26 Cal.Rptr.3d 527], in support of his position. *Green* is inapposite because it focused primarily on the applicability of Senate Bill 899 to section 5814. Section 5814 provides penalties as increased compensation for unreasonable delay in providing workers' compensation benefits. Section 4663, and the new PD schedules promulgated pursuant to it, apply to this

case, not section 5814. We rely on the holdings of *Kleemann, post*, and its progeny, rather than dicta in *Green*.

■ As the Court of Appeal explained in *E & J Gallo Winery v. Workers' Comp. Appeals Bd., supra*, 134 Cal.App.4th at page 1543, "[a]fter a rocky transition period, it is now well settled that, consistent with the Legislature's intent, 'the apportionment provisions of Sen. Bill 899 must be applied to all cases . . . not yet final at the time of the legislative enactment on April 19, 2004, regardless of the earlier dates of injury and any interim decisions.' " (Citing *Marsh v. Workers' Comp. Appeals Bd., supra*, 130 Cal.App.4th at p. 910; *Rio Linda Union School Dist. v. Workers' Comp. Appeals Bd.* (2005) 131 Cal.App.4th 517, 531 [31 Cal.Rptr.3d 789]; *Kleemann v. Workers' Comp. Appeals Bd.* (2005) 127 Cal.App.4th 274, 285–289 [25 Cal.Rptr.3d 448]; see also *Nunez v. Workers' Comp. Appeals Bd.* (2006) 136 Cal.App.4th 584, 593 [38 Cal.Rptr.3d 914].) This case is still pending long after April 2004.

*Apportionment Provisions of Section 4663*

*Substantial Evidence*

■ Andersen contends that substantial evidence does not support the decision of Board regarding apportionment. The apportionment provisions at issue are contained in section 4663. Section 4663 provides that apportionment of PD shall be based on causation as determined and discussed in the physician's report. (§ 4663, subds. (a), (b) & (c).) The report must state "what approximate percentage of the permanent disability was caused by the direct result of injury arising out of and occurring in the course of employment and what approximate percentage . . . was caused by other factors . . . ." (§ 4663, subd. (c); see *Escobedo v. Marshalls* (2005) 70 Cal.Comp.Cases 604, 607, 611–612, 620–621 [physician must approximate percentage apportionment of PD attributable to industrial and nonindustrial factors based on causation, to a reasonable medical probability].)

The physician must arrive at his opinion to a "reasonable medical probability," and not on "surmise, speculation, conjecture, or guess." (*Escobedo v. Marshalls, supra*, 70 Cal.Comp.Cases at pp. 620–621.) For example, it is insufficient for a physician and Board to say only that some given percentage is "fair," without providing some pertinent information which supports that determination. (*Id.* at p. 621.) The physician should show the reasoning or basis for his or her conclusions, by providing germane facts discovered from

an examination of the applicant, his or her medical history, or other pertinent materials. (*Id.* at pp. 620–622.) The physician should also discuss the nature of the disease; why it is responsible for the approximate percentage of the PD. (*Id.* at p. 621.)

Andersen parses extensive but selective portions of the deposition of Dr. McDavid, and argues that Dr. McDavid's assessment of Andersen's PD did not comport with the *Escobedo* criteria. We disagree.

In both his lengthy medical report and his deposition testimony, Dr. McDavid explained how and why he arrived at his apportionment figures. He medically examined Andersen, reviewed his medical history, considered his job description and tenure in the position, and sifted through other historical information about his life, as well as subpoenaed records. He also considered germane facts gleaned from the reports of his chiropractor, Dr. John Michalak. In his deposition, Dr. McDavid testified that his opinion is based on his "best medical judgment" to a "reasonable medical probability."

In his medical report, Dr. McDavid explained that Andersen had to repetitively use his hands to grasp, manipulate, push and pull objects at work. He also noted that Andersen's work required substantial 10-key and computer keyboarding. Dr. McDavid took into account Andersen's participation in the regular activities of life, such as driving and moving furniture on occasion. Dr. McDavid found evidence of both carpal and cubital tunnel syndromes, as well as transposition of the ulnar nerve of the right elbow, and degenerative discs.

In Dr. McDavid's medical judgment, Andersen's activities at work were the primary cause of the PD he sustained. Initially, Dr. McDavid concluded that about 70 percent of his PD was caused by cumulative trauma at work, and about 30 percent of his PD was caused by nonindustrial factors of daily living. Later, Dr. McDavid revised upwards his breakdown of apportionment to work. After reconsidering all the factors, he concluded that 80 percent of his cervical disability and 70 percent of his upper extremity disabilities were caused by work.

Dr. McDavid conceded that the percentages he provided are approximations that are not precise and require some intuition and medical judgment. This does not mean his conclusions are speculative. He stated the factual bases for his determinations based on his medical expertise, as set forth in his lengthy report and deposition. Board discussed these facts and factors as well. After reviewing the entirety of the evidence, we conclude that substantial evidence supports Board's conclusion regarding apportionment.

Accordingly, we annul the decision of Board regarding City's requirement that Andersen use vacation time rather than sick leave. In all other respects, we affirm the decision of Board. We remand for further proceedings, consistent with this opinion, including, but not limited to, the determination of further awards, fines and costs to be awarded Andersen pursuant to section 132a.

Gilbert, P. J., and Perren, J., concurred.