[No. C000401. Third Dist. Apr. 7, 1987.]

RICKIE LEAMON, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and CAMPBELL
SOUP COMPANY, Respondents.

CAMPBELL SOUP COMPANY, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and RICKIE
LEAMON, Respondents.

**[Opinion certified for partial publication.*]**

---

*See footnote 1, *post,* page 1412.

**COUNSEL**

Thomas L. Plumb for Petitioner and Respondent Leamon.

John B. Frailing as Amicus Curiae on behalf of Petitioner Leamon.

F. Clinton Murphy for Petitioner and Respondent Campbell Soup.

Richard W. Younkin, William B. Donohoe, Alvin R. Barrett and Charles E. Finster for Respondent Workers' Compensation Appeals Board.

**OPINION**

**BLEASE, J.**—This matter arises on consolidated petitions for writs of review of decisions of the Workers' Compensation Appeals Board (Board). The Board awarded Rickie Leamon increased compensation (Lab. Code, § 132a) for three absences from work because Campbell Soup Company (Campbell) failed to correct its records to show that they were industrially caused, as determined by a workers' compensation judge (WCJ).

Leamon inter alia seeks to compel the Board to order that he be paid lost wages and benefits, the loss of which he claims was caused by Campbell's failure to correct its records. Campbell seeks to overturn a decision favorable to Leamon. We will affirm the decisions of the Board.[1]

FACTS AND PROCEDURAL BACKGROUND

Under a collective bargaining agreement between Leamon's union and Campbell, an employee may be discharged for cause. As applied to this case, under this agreement cause is measured by Campbell's absentee policy. This policy provides that unexcused absences and other employee shortcomings are assigned demerits. Leamon was discharged by Campbell on January 5, 1981, for excessive demerits. Some of the demerits were assigned by counting, as *un*excused, three absences from work which occurred on March 5, April 11, and April 18 of 1980. Under Campbell's absentee policy, absences which are caused by work injury are excused.

Initially, Leamon made no claim that any of the three absences were excused. A week after the April 18th absence, he claimed that it should be excused as caused by industrial injury. Campbell disputed the merits and timeliness of this claim and declined to excuse the absence. Leamon had informed Campbell that the remaining two absences were personal in nature. Such absences are unexcused under Campbell's absentee policy. Some nine months later, after he was fired, Leamon recanted, claiming these absences also were caused by industrial injury.

He then sought temporary disability benefits on the ground all three absences were caused by industrial injury. In August 1982, a WCJ found that the three absences were caused by work injuries. No appeal from this determination was taken by Campbell.

Leamon also sought reinstatement to his job under the collective bargaining agreement, claiming that the disputed absences should be excused as industrially caused, which would result in a reduction in the number of demerits below that warranting dismissal. In April 1983 arbitrators, empaneled in the collective bargaining proceeding, ruled that Leamon was estopped to claim that the March 5th and April 11th absences were excused, but ruled that the April 18 absence should be excused. The panel also found that certain other demerits were ungrounded and therefore that, in the aggregate, there were insufficient demerits to sustain the dismissal. The panel directed that Leamon be reinstated as of the date of the decision without backpay and benefits. He was reinstated on April 18, 1983.

---

[1]Pursuant to rule 976.1 of the California Rules of Court, the Reporter of Decisions shall not publish parts II to V of this opinion. In all other respects the opinion shall be published.

On August 26, 1983, Leamon filed a supplemental complaint with the Board alleging that Campbell had discriminated against him by failing to excuse the industrial-caused absences.

On July 8, 1984, Leamon was again discharged by Campbell, this time for misconduct. Thereafter he filed another supplemental complaint alleging that this discharge was also the product of discriminatory conduct involving the industrial-caused absences.

Leamon's claims of discrimination were tried to the WCJ in June 1985 and found to be meritless. The Board granted reconsideration. It found that Campbell did not violate Labor Code section 132a when it terminated Leamon on January 5, 1981, or subsequent to his reinstatement in April 1983 following the decision of the arbitrators. However, the Board did find that Campbell discriminated against Leamon when it failed to correct its records following the WCJ determination that they were industrially caused. It awarded Leamon "a 50% increase in his workers' compensation."

DISCUSSION

I

Leamon contends that the Board is compelled to grant him backpay and benefits pursuant to the provisions in Labor Code section 132a[2] which state that an applicant "shall [] be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the [discriminatory] acts of the

---

[2]Labor Code section 132a says as follows in pertinent part: "It is the declared policy of this state that there should not be discrimination against workers who are injured in the course and scope of their employment. [¶] (1) Any employer who discharges, or threatens to discharge, or in any manner discriminates against any employee because he or she has filed or made known his or her intention to file an application for adjudication with the appeals board, or because the employee has received a rating, award, or settlement, is guilty of a misdemeanor and the employee's compensation shall be increased by one-half, but in no event more than ten thousand dollars ($10,000), together with costs and expenses not in excess of two hundred fifty dollars ($250). Any such employee shall also be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer.

". . . . . . . . . . . . . . .

"Proceedings for increased compensation as provided in paragraph (1), or for reinstatement and reimbursement for lost wages and work benefits, are to be instituted by filing an appropriate petition with the appeals board, but these proceedings may not be commenced more than one year from the discriminatory act or date of termination of the employee. The appeals board is vested with full power, authority, and jurisdiction to try and determine finally all the matters specified in this section subject only to judicial review, except that the appeals board shall have no jurisdiction to try and determine a misdemeanor charge. The appeals board may refer and any worker may complain of suspected violations of the criminal misdemeanor provisions of this section to the Division of Labor Standards Enforcement, or directly to the office of the public prosecutor."

employer." He asserts that, "but for" his industrial-caused absences, he would not have been fired by Campbell in January 1981, nor would his termination have been continued after the WCJ's decision in August 1982, nor would he again have been terminated following his reinstatement to employment with Campbell by the order of the arbitration panel. We address these claims seriatim.

## A.

The Board found that Campbell did not discriminate against Leamon by firing him in January 1981 because Campbell did not then know that his absences were industrially caused. The Board, relying upon *Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658 [150 Cal.Rptr. 250, 586 P.2d 564], said that "before an employer's action against an industrially-injured employee may be deemed discriminatory, the employer must have been aware of the fact of the industrial injury at the time of its action. . . ." It concluded: "[The] evidence establishes that when it terminated [Leamon, Campbell] was not acting on the basis that [Leamon] had been industrially-injured or absent from work because of his industrial injury; it acted solely on the basis that, under [Campbell's] Code of Conduct, [Leamon] appeared to be an unsatisfactory employee. A Labor Code Section 132a violation is thus not made out." We agree.

Section 132a provides: "It is the declared policy of this state that there should not be discrimination against workers who are injured in the course and scope of their employment." *Judson* reads this provision to "specifically provide[] sanctions against '[a]ny employer who discharges, or threatens to discharge' an employee," predicated upon an industrial injury. (*Judson, supra,* 22 Cal.3d at p. 667.) *Judson* applied this policy, as a substantive rule of law, holding that an employer engaged in an act of discrimination in terminating an employee's seniority rights, and consequently his employment, because of an extended absence which it knew to be industrially caused. *Judson* said that the employer had "knowledge" that the employee " 'was off work because of an accident which occurred at Judson Steel' " (*id.,* at p. 663) and that it "eschewed its own standard procedure for safeguarding absent employees' accumulated seniority." (*Id.,* at p. 665, fn. omitted.) Thus, the unlawful discrimination consisted of adverse employment action predicated upon an absence from work known to the employer to be caused by an industrial injury.

To similarly conclude here, it must be found that Leamon's dismissal was predicated, in material part, upon absences which Campbell knew to be caused by industrial injury. It is undisputed that, at the time of its dismissal action, Campbell did not know that two of Leamon's absences were caused

by industrial injury. As the Board found, on the basis of Leamon's own testimony, it was not until after the dismissal "that [Leamon] even suggested that his March 5, 1980 and April 11, 1980 absences were related to work injury." Accordingly, the action of dismissal could not have been knowingly predicated upon the industrial character of these absences.

The third absence presents a different issue. Campbell, before its discharge action, knew that Leamon claimed that this absence was caused by an industrial injury. Campbell rejected the claim because it disputed its validity.

Under the collective bargaining agreement between Campbell and Leamon's union, Leamon could not be dismissed except for cause, measured by Campbell's absentee policy. Under that policy absences caused by industrial injury may not be counted towards dismissal. Thus, as a matter of contract, Leamon would be entitled to reinstatement if he were improperly dismissed under Campbell's absentee policy. That issue was tendered in the grievance and arbitration proceedings which Leamon initiated under the contract, ultimately resulting in his reemployment. ■■■■■ However, the separate question, whether the resolution in Leamon's favor in the worker's compensation forum of the disputed claims regarding his third absence is binding upon Campbell for purposes of application of its absentee policy, is an issue we do not reach.[3]

The Board resolved the issue as a question of causation. As the Board found, "even if the April 18, 1980 absence had been eliminated from his absentee record, [Leamon] would still have had sufficient demerits [under Campbell's absentee policy] to warrant his termination in January 1981." So viewed, the act of counting that absence for purposes for dismissal could not have been discriminatory because it had no discriminatory effect recognized by the workers' compensation law. As noted, section 132a directs that an employee "shall [ ] be entitled to reinstatement and reimbursement for lost wages and work benefits [only if they were] *caused by* the acts of the employer." (Italics added.)

That was the case in *Judson*. At issue was "whether an employer who terminates an employee's seniority rights, and, ultimately, his employment, *because of* the employee's absence from his job as the result of an industrial injury, has engaged in unlawful discrimination within the meaning of Labor Code section 132a." (22 Cal.3d at p. 661, italics added.) *Judson* answered that question in the affirmative. It said: "The policy of protection which the workers' compensation laws declare can only be effectuated if an employer

---

[3]We do note that an employer is on notice that such a dispute is subject to resolution in a worker's compensation forum.

may not discharge an employee because of the employee's absence from his job as the consequence of an injury sustained in the course and scope of employment." (*Id.,* at p. 669.) The court found a causal linkage between the industrially caused absences and the employee's discharge in the fact that the employer "eschewed its own standard procedure for safe guarding absent employees' accumulated seniority. [As the court further said:] On the basis of applicant's showing that *but for* his industrial injury and forced absence he would not have been laid off ... the board could reasonably infer that [the employer] discriminated against applicant in violation of section 132a." (*Id.,* at p. 665; fn. omitted; italics added.)[4] Given that result, the remedy of reinstatement was directed by section 132a. Conversely, as here, if the employee would have been terminated in any event under the absentee policy, for reasons having nothing to do with an industrial injury, it cannot be said that an act of discrimination by the employer, by application of the policy, *caused* the termination as required by section 132a.

### B.

██ Independent of the foregoing claim of right to reinstatement as of the date of dismissal, Leamon claims that "the failure by Campbell to adjust Leamon's absentee record in August, 1982 [following the WCJ decision] *caused* him to lose all wages and work benefits from that time until April, 1983 when he was reinstated." (Italics added.) This claim is implicitly premised upon the assumption that he was properly dismissed but later became entitled to *re*employment and its attendant benefits by virtue of the Board's decision that Campbell's failure to "correct" Leamon's records following the WCJ decision that the absences were industrially caused violated section 132a. Using this springboard Leamon leaps to the conclusion that, as a consequence of that failure "lost wages and work benefits [were] *caused by* the [discriminatory] acts of the employer." (Lab. Code, § 132a, italics added.)

---

[4]The "but for" test of causation requires that the causal connection be *measured* by what otherwise would have happened, not by what did occur. (See Mackie, The Cement of the Universe (1980) A Study in Causation, p. 54.) It cannot be determined what otherwise would have happened without a rule of some kind which informs us of what would have been done, "but for" the claimed cause, and hence what should have happened. "[W]henever we are concerned with such [causal] connexions, whether for the purpose of explaining a puzzling occurrence, assessing responsibility, or giving an intelligible historical narrative, we employ a set of concepts restricting in various ways what counts as a consequence. These restrictions colour *all* our thinking in causal terms ...." (Orig. italics) (Hart & Honore, Causation in the Law (1959) p. 65.) What "counts as a consequence" in the law is to be found in a rule or principle which measures the duties of the parties, i.e. what they should do to avoid some legally recognized injury, in the context (conditions) of a given case. In *Judson* the employer was under a legal duty not to terminate an employee for reasons predicated upon the employee's industrial injuries. It did so. The statement of the duty contains a description of the effect to be avoided. Therein lies the measure of cause (breach of duty) and effect (termination).

Leamon does not tell us in what manner he became entitled to reemployment to a job, from which he had been properly terminated, upon the failure of Campbell to correct his records as a *former* employee. The correction of such records does not entail the result that the former employee gets his job back. Some other nexus implicating a duty of reemployment must be found. Accordingly, the seminal question is: was Campbell under a duty to reemploy Leamon in the circumstances of this case? In pursuit of an answer we first look at what the Board did.

The Board found that Campbell "did discriminate against [Leamon] and violate Section 132a in failing to correct its error when, on August 18, 1982, it became clear that all three absences were due to industrial injury." It awarded Leamon "a 50% increase in his workers' compensation" as a sanction for this failure. It said: "regardless of the nature of applicant's initial reports respecting his absences and regardless of what the arbitration panel might subsequently decide, the WCJ had determined that, for purposes of his worker's compensation claims, applicant's three absences were industrially-caused. Thus, consistent with the Labor Code Section 132a policy of preventing discrimination against industrially-injured employees and in accordance with defendant's own policy of not penalizing employees because of an industrial injury, defendant should have promptly corrected its absentee records following the WCJ's August 1982 decision. We will therefore award applicant a 50% increase in his workers' compensation, up to the statutory maximum of $10,000.00, to be adjusted by the parties or determined by a workers' compensation judge if the parties cannot reach agreement. (Lab. Code, Section 132a(1))." ·

There is no act of discrimination under the workers' compensation law without a discriminatory effect. To discriminate means to act or to fail to act (when there is a duty to do so) with the *consequence* that some adverse result ensues. Nonetheless, the Board found that Campbell "did discriminate against [Leamon] and violate Section 132a in failing to correct its [records]" and imposed sanctions for that failure. It attributed no other injurious consequences to this failure. Accordingly, it must be the effect of that failure alone which is discriminatory, or there is none at all. The resolution of this apparent anomaly lies in the effect of the concurrent action taken by the arbitration panel, which Leamon had initiated under the grievance provisions of the union contract.

In acting, the Board had the benefit of hindsight regarding the outcome of the arbitration proceeding which resulted in Leamon's reemployment by Campbell.[5] In that circumstance, Leamon's prior absence record had a

---

[5]The parties have tendered no issue concerning the jurisdiction of the Board under section 132a to resolve issues involving the interpretation of a collective bargaining agreement or the

bearing upon the continuation of his reemployment under Campbell's absentee policy. That bearing is measured in much the same way as three strikes measure the opportunities of a baseball player to hit in a baseball game. If the strikes are reduced to two, the opportunities of the batter are reduced - to his obvious disadvantage. Therein lies the discriminatory effect of misstating the count. On the other hand, if the putative batter is no longer a player, it is senseless to say that his hitting opportunities have been disadvantaged; rather, he is no longer in the game.

However, Leamon was "in the game" by virtue of the action of the arbitration panel which directed that Campbell reemploy him. Consequently, his opportunities to retain his reemployed status were reduced by Campbell's action in unlawfully counting his industrially-caused absences. In that way Campbell engaged in a discriminatory action. The Board did say that it acted for the purpose of "preventing discrimination," but we take that to mean for the purpose of preventing *further* discrimination, i.e., punitive action predicated upon the miscounted absences.

It is one thing to suffer a loss of a contingent employment advantage and another thing to lose one's employment. With respect to the claim tendered here, the failure to correct Leamon's records did not cause him to lose his job following his reemployment. That did occur later, for separate reasons which we will assess. However, outside of science fiction and the internal revenue laws there are no consequences of something that has not happened. That leaves Leamon's claim of a right to employment benefits bereft of support. In refusing to award backpay, the Board implicitly found that Campbell had no duty to reemploy Leamon as a mere consequence of Campbell's failure to correct its records of his former employment. Leamon makes no overt attack upon this sensible proposition. That leaves Campbell's absentee policy, embraced by the collective bargaining contract, as the implied source of his claim he had a right to reemployment predicated upon the correction of his records. The difficulty with this claim is that Campbell had no policy requiring it to *re*employ an employee who was properly dismissed. We have no occasion to consider whether or under what circumstances a duty of reemployment might be located elsewhere.

C.

■ That brings us to Leamon's remaining claim. He was dismissed a second time in July 1984, following his reinstatement by the arbitration

---

employer's policies insofar as they might impact upon the causal relationship between an industrial-caused absence and its adverse employment consequences. (Cf. *Judson, supra.*) Nor have they suggested that there is a conflict to be resolved between actions taken by potentially competing forums for the resolution of the causal issue provided by the workers' compensation laws and a collective bargaining agreement.

panel. He asserts that this dismissal was the product of Campbell's *animus* toward him, growing out of his worker's compensation claims, and of Campbell's failure to correct his records. The Board, to the contrary, found that, "leaving aside his absences due to industrial injury, applicant was frequently absent or late; and in consideration of the WCJ's ability to observe the demeanor of applicant and defendant's witnesses and to assess their credibility . . . we will not disturb the WCJ's finding that applicant's July 8, 1984 discharge was not at all related to his industrial injuries." We have examined the record and conclude that the Board's findings on these points are supported by substantial evidence.

## II-V*

. . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The decisions of the Board are affirmed.

Evans, Acting P. J., and Sims, J., concurred.

A petition for a rehearing was denied April 29, 1987, and the application of petitioner Leamon for review by the Supreme Court was denied June 24, 1987.

---

*See footnote 1, *ante,* page 1412.