[No. C011675. Third Dist. Feb. 24, 1994.]

ROSETHA DYER, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and FRANCHISE
TAX BOARD, Respondents.

**COUNSEL**

Mastagni, Holstedt & Chiurazzi and S. Curtis Winter for Petitioner.

William B. Donohoe, Krimen, Hershenson, Klein, Da Silva & Daneri and Don E. Clark for Respondents.

**OPINION**

**SPARKS, J.**—Labor Code section 132a prohibits discrimination against workers who are injured in the course of employment. (See *Judson Steel*

*Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658 [150 Cal.Rptr. 250, 586 P.2d 564].) In proceedings before the Workers' Compensation Appeals Board (WCAB), the respondent Franchise Tax Board was found to have discriminated against petitioner Rosetha Dyer because of a work injury within the meaning of Labor Code section 132a. The Franchise Tax Board was ordered to pay an increased compensation award and to reinstate Dyer to the probationary position she held at the time of her injury. On writ of review, Dyer contends that she should have been reinstated in a permanent rather than probationary capacity and that she is entitled to an award of lost wages and benefits.[1] We reject these contentions and shall affirm the award of the WCAB.

## FACTUAL AND PROCEDURAL BACKGROUND

Dyer was employed by the State of California as an intermittent key data operator, which meant that she would work full-time for part of the year. Dyer testified that she began working for the State of California as an intermittent employee at the Department of Motor Vehicles in 1978. She worked in 1979 and 1980 and again in 1984 and 1985. On January 28, 1985, Dyer began working for the Franchise Tax Board as a probationary intermittent employee.

In November 1984 Dyer noticed pain in her right wrist. The problem seemed to clear up but recurred in February 1985, after she had begun working for the Franchise Tax Board. During her period of employment at the Franchise Tax Board, Dyer received written probationary evaluation reports in which she was told that improvement was required in that she was making too many errors. It was also noted that her attitude was belligerent and that she had excessive absences. For example, in a performance report covering the period from January 28, 1985, to April 1, 1985, Dyer was found to need improvement in her skills to perform her assigned tasks accurately

---

[1]Dyer's petition for reconsideration by the WCAB was denied on June 27, 1991, and she filed her application for a writ of review on August 16, 1991, the 50th day following denial of reconsideration. We denied the application for a writ of review, relying on the decision in *Southwest Airlines* v. *Workers' Comp. Appeals Bd.* (1991) 234 Cal.App.3d 1421 [286 Cal.Rptr. 347], which held that the 45-day time period for applying for a writ of review following denial of a petition for reconsideration (Lab. Code, § 5950), is not extended by 5 days when service is by mail (Code Civ. Proc., § 1013, subd. (a)). The Supreme Court granted Dyer's petition for review to consider the timeliness question. Thereafter the high court issued its decision in *Camper* v. *Workers' Comp. Appeals Bd.* (1992) 3 Cal.4th 679 [12 Cal.Rptr.2d 101, 836 P.2d 888], in which the court agreed with the conclusion of the *Southwest Airlines* case but held that in view of conflicting decisions in the Courts of Appeal the decision would be given prospective effect only. (*Camper*, *supra*, 3 Cal.4th at p. 690.) In light of *Camper*, the court transferred this matter to this court with directions to issue a writ of review to be heard when the matter is ordered on calendar.

and completely, in her knowledge of the methods and procedures of the job, and in her attitude. A review of her work showed an unusually high number of errors in the batches she entered. This high rate of error was attributed to her lack of knowledge of the reference materials and procedures. Dyer was also reported to be loud and belligerent in bank meetings and to have taken an excessive amount of time off from work, including an absence without official leave for eight hours. She was warned to "make the necessary adjustments in relation to your attendance, accuracy, and attitude, as your entire job performance is being adversely affected by these factors. Failure to improve to an acceptable level may result in rejection on probation."

In her second performance report, covering the period from April 2, 1985, to May 24, 1985, Dyer's overall rating was once again found to be unacceptable. Her skills, work habits and attitude were all rated as unacceptable. She continued to be absent from work for an excessive period of time. Her error rate remained unacceptably high, mainly caused by not following instructions. In order to correct her accuracy problems, Dyer was retrained on certain procedures but still continued to make unnecessary errors. Despite her retraining, she continued to disregard instructions and failed to correct her accuracy problems. Because of these continuing problems her supervisor recommended that Dyer be rejected on probation.

Dyer testified that her production was down and she was making errors because she was attempting to work with a wrist brace and that some of her absences were attributable to medical appointments or wrist pain. Eventually, on June 30, 1985, Dyer was rejected on probation and her employment was terminated.

Dyer sought adjudication of a workers' compensation claim and subsequently petitioned for increased benefits and remedies pursuant to Labor Code section 132a. The adjudication of claim and the petition for increased benefits and remedies were bifurcated for separate determination. In a decision on the claim it was determined that Dyer suffered an injury in the course of her employment; she was temporarily disabled on various dates between February 12, 1985, and June 30, 1985; she was temporarily totally disabled between July 1, 1985, and August 5, 1987; and the injury caused permanent disability of 24½ percent. After further hearing the workers' compensation judge found in favor of Dyer on her claim for increased benefits and remedies. It was ordered that she be reinstated to her status as a probationary key punch operator and that her workers' compensation award be increased by 50 percent, not to exceed $10,000. Whether Dyer can satisfactorily perform the duties of a key data operator for the Franchise Tax Board, the judge concluded, "can be objectively determined during the probationary period ordered reinstated by this decision."

After unsuccessfully petitioning for reconsideration, Dyer commenced this proceeding on writ of review.

## Discussion

### I

Dyer contends that the WCAB erred in failing to order that she be reinstated as a permanent rather than probationary employee. She reasons that had it not been for her injury and the discrimination of the Franchise Tax Board, she may have achieved permanent status and that reinstatement to probationary status perpetuates the discriminatory practices of the Franchise Tax Board. We agree that if the only ground for rejecting Dyer on probation had been an unlawful one, she would be entitled to be reinstated as a permanent employee. But that was not the case here and consequently she is not so entitled to be reinstated as a permanent employee.

In his opinion on decision, the workers' compensation judge reasoned that the employer's concern with Dyer's performance while on probation focused upon her rate of production, her accuracy, and her attendance, and that those factors were affected by her injury and treatment. The judge concluded that it was discriminatory for the employer not to take steps to accommodate Dyer's disability and that her ability to perform to the standards established by the employer should not have been measured when her ability to perform was affected by her injury. The judge concluded: "Whether the applicant can satisfactorily perform the duties of a Key Data Operator for the Franchise Tax Board can be objectively determined during the probationary period ordered reinstated by this decision."

At all relevant times Labor Code section 132a, subdivision (1), provided: "Any employer who discharges, or threatens to discharge, or in any manner discriminates against any employee because he or she has filed or made known his or her intention to file an application for adjudication with the appeals board, or because the employee has received a rating, award, or settlement, is guilty of a misdemeanor and the employee's compensation shall be increased by one-half, but in no event more than ten thousand dollars ($10,000), together with costs and expenses not in excess of two hundred fifty dollars ($250). Any such employee shall also be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer." In *Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.*, *supra*, 22 Cal.3d at pages 668 and 669, the Supreme Court held that section 132a prohibits discrimination against an employee based upon a job-related injury regardless whether the worker made or indicated an intent to make a workers' compensation claim.

Labor Code section 132a provides that in the event an employer discriminates against an employee due to injury the employee is entitled to reinstatement, but does not otherwise define "reinstatement." However, reinstatement is a common remedy in cases of employment discrimination. (See, e.g., 29 U.S.C. § 626(b) [age discrimination]; 42 U.S.C. § 2000e-5(g) [discriminatory employment practices].) In such cases courts are vested with broad equitable discretion in fashioning and applying an appropriate remedy. (*Franks* v. *Bowman Transportation Co.* (1976) 424 U.S. 747, 763 [47 L.Ed.2d 444, 461, 96 S.Ct. 1251].)

In general, the WCAB has broad equitable powers with respect to matters within its jurisdiction. (*Kaiser Foundation Hospitals* v. *Workers' Comp. Appeals Bd.* (1978) 83 Cal.App.3d 413, 418 [148 Cal.Rptr. 54].) That the Legislature intended the WCAB to exercise its equitable powers with respect to matters of reinstatement is made clear in Labor Code section 132a, which provides that proceedings for reinstatement are to be instituted before the WCAB and "[t]he appeals board is vested with full power, authority, and jurisdiction to try and determine finally all matters specified in this section subject only to judicial review, except that the appeals board shall have no jurisdiction to try and determine a misdemeanor charge. . . ." (Lab. Code, § 132a, subd. (4).) We perceive nothing in this statutory scheme which would indicate that the Legislature attached a different meaning to "reinstatement" than its usual meaning in employment discrimination cases or that it intended to circumscribe the WCAB's discretionary authority. Accordingly, in considering the WCAB's application of Labor Code section 132a, we may look for guidance to authorities arising under other statutory schemes for the prevention and redress of employment discrimination.

■ In employment discrimination cases, "reinstatement" may be used to refer to a return of an employee to a former position with the same rights and responsibilities while "instatement" may be used to refer to remedial placement of the employee in a different or advanced position. (See *Brunneman* v. *Terra Intern., Inc.* (5th Cir. 1992) 975 F.2d 175, 180; *Locke* v. *Kansas City Power and Light Co.* (8th Cir. 1981) 660 F.2d 359, 366-367.) In view of the broad equitable power vested in the courts, in an appropriate case the power to order "reinstatement" includes the discretion to order "instatement." (*Ibid.*) But in such cases "instatement" is a matter of discretion and is not a matter of right. (*Ibid.*)

■ It has been observed that in fashioning a remedy for employment discrimination courts are hesitant to order that the injured party be promoted. (2 Larson, Employment Discrimination (1992 rev.) § 55.23, pp. 11-78 to 11-79.) "The problem is that the courts are uncertain as to whether the

plaintiff is really qualified for the promotion, and they are hesitant to usurp the prerogatives of management in determining, interpreting, and applying the qualifications. When dealing with a ministerial promotional scheme, say when only length of time on the job is involved, the courts have little difficulty in ordering promotion. Unfortunately, many promotions involve more subtle and complex qualifications, and there the courts fear to tread. They prefer to alter the promotional scheme to remove its discriminatory aspects, leaving the plaintiff free to reapply for the promotion and the employer free to determine, in a nondiscriminatory manner, whether the plaintiff is qualified for the job. . . ." (*Ibid.*)

Judicial reluctance to order an employee instated to a higher position than he or she occupied when discrimination occurred extends to the probationary/permanent status of the employee. (See *Locke* v. *Kansas City Power and Light Co., supra,* 660 F.2d at pp. 367-368; *Carrero* v. *New York City Housing Authority* (S.D.N.Y. 1987) 668 F.Supp. 196, 203-204, affd. (2d Cir. 1989) 890 F.2d 569; *Berkman* v. *City of New York* (E.D.N.Y. 1983) 580 F.Supp. 226, 233, affd. 755 F.2d 913; *Poindexter* v. *Kansas City Mo. Water Dept.* (W.D.Mo. 1983) 573 F.Supp. 647, 659, affd. 754 F.2d 377; *Turgeon* v. *Howard University* (D.D.C. 1983) 571 F.Supp. 679, 687-688. As observed by the court in *Carrero* v. *New York City Housing Authority, supra,* 668 F.Supp. at page 203, where discrimination affects an employee's performance during a probationary period "[t]he remedy for this is not to grant the plaintiff a job for which she may not be qualified." Instead, the employee should be reinstated on probation with a renewed opportunity to prove herself fairly. (*Ibid.*)

The general judicial reluctance to interfere with management decisions by ordering instatement rather than reinstatement has particular significance under the particular circumstances of this case. Our state Constitution provides that, except as exempted by the Constitution, every officer and employee of the state is within the civil service and "[i]n the civil service permanent appointment and promotion shall be made under a general system based upon merit ascertained by competitive examination." (Cal. Const., art. VII, § 1, subd. (b).) The Constitution creates the State Personnel Board and vests it with jurisdiction over the merit aspects of civil service including the enforcement of civil service statutes, the prescription of probationary periods and classifications, and the review of disciplinary actions. (Cal. Const., art. VII, §§ 2, 3; *Pacific Legal Foundation* v. *Brown* (1981) 29 Cal.3d 168, 193 [172 Cal.Rptr. 487, 624 P.2d 1215].) Included in the State Personnel Board's authority is the power to review a decision of an appointing power to reject a probationer and to take appropriate action up to and including restoration

of employment with an award of backpay. (Gov. Code, §§ 19175-19180.)[2] In this case it is unnecessary to consider, and we do not hold, that the constitutional jurisdiction of the State Personnel Board and a state employee's remedy before that board would preclude the WCAB from ordering instatement of a probationer in permanent status. We hold only that these factors strongly support the exercise of restraint by the WCAB in making reinstatement determinations. In short, where, as here, a probationary state employee is rejected on probation for numerous reasons and the WCAB finds injury-related discrimination relating to some but not all of those reasons and orders the employee reinstated as a probationary rather than permanent employee, only the most manifest abuse of discretion could warrant judicial interference in that decision.

In this case the WCAB did not find that Dyer had or could perform up to the standards required by the Franchise Tax Board. It did not find that but for her injury she would have successfully completed her probationary period. In fact, the evidence would not have supported such a finding.[3] Instead, what the WCAB found was that Dyer's injury affected her ability to perform and that whether she could perform to the standards of the Franchise Tax Board should not have been determined while her abilities were affected

[2]The Government Code specifically forbids an appointing power from rejecting a probationer for any cause that would constitute prohibited discrimination. (Gov. Code, § 19173.) The Government Code also forbids discrimination in the civil service based upon, among other things, physical disability. (Gov. Code, 19702, subd. (a).) If the State Personnel Board finds that discrimination has occurred it is empowered to require the appointing power to cease and desist and "to take any action, including, but not limited to, hiring, reinstatement or upgrading of employees, with or without back pay, and compensatory damages, which, in the judgment of the board, will effectuate the purposes of this part. . . ." (Id., subd. (f).)

[3]Although the workers' compensation judge indicated that Dyer's rate of production was one of her employer's concerns with her work, both of her written probationary evaluations at the time and the testimony of her supervisor at the hearing indicate that her rate of production was sufficient. Dyer's written performance reports refer to excessive absences, and while some of these absences were attributable to medical appointments she also gave other excuses and had some absent-without-leave (AWOL) absences. The evaluations refer to a belligerent attitude, but this was not given as a reason for rejection but as a contributing factor in her inability to take directions or to ask for clarification in order to avoid errors. The primary complaint identified in the performance evaluations and in her supervisor's testimony was an excessive and unacceptable error rate. Dyer testified that her injury affected her mechanical ability to make key strokes and thus affected her error rate. However, the written performance evaluations primarily complain of judgmental rather than mechanical errors. The first evaluation complains exclusively of nonmechanical-, judgmental-type errors such as the failure to follow data entry rules and directions or to seek clarification. It states: "You are almost perfect in keying numbers, but your knowledge of these reference materials and procedures must improve in order for you to achieve any degree of accuracy." The second evaluation, in which it was recommended that she be rejected on probation, again complained of excessive errors and primarily attributed those errors to nonmechanical causes, such as ignoring instructions, the failure to follow procedures, and omitting data, but added 'various keying errors." While the WCAB found that Dyer's injury contributed to her inability to perform, this

by injury. In these circumstances the decision of the WCAB to reinstate Dyer as a probationary employee was well within its discretion.

## II

Dyer contends that the WCAB erred in failing to make an award of lost wages and work benefits. The findings and order on this matter awarded Dyer a 50 percent increase in the benefits previously awarded, not to exceed $10,000, and ordered her reinstated as a probationary employee, but did not make an award for lost wages and benefits. In his report and recommendation on petition for reconsideration, the workers' compensation judge noted that the original award established that Dyer was temporarily totally disabled until August 1987, and said that there was no proof that any wages and benefits had been lost by Dyer from June 30, 1985, until the time of hearing.

Dyer argues that the provision for reimbursement for lost wages and benefits in Labor Code section 132a is penal in character and its application cannot be predicated on any factor other than the finding of discrimination. We disagree. In the event an employer discriminates against an injured worker, Labor Code section 132a provides two penalties, one criminal and one civil. The criminal penalty, a misdemeanor, is beyond the jurisdiction of the WCAB and is not at issue here. The civil penalty is a 50 percent increase in the employee's compensation award, up to $10,000. That penalty applies without regard to proof of actual loss or damage or of any other showing beyond that of discrimination itself. In contrast to the penal provisions of the law, the provision for reimbursement is remedial in character. This is clearly established by the limitation of reimbursement to those lost wages and benefits "*caused by* the acts of the employer." (See *Leamon* v. *Workers' Comp. Appeals Bd.* (1987) 190 Cal.App.3d 1409, 1415 [235 Cal.Rptr. 912], italics in original.) In view of this limitation and the fact that the Legislature otherwise provided for a civil penalty for acts of discrimination, Labor Code section 132a does not admit of the construction urged by Dyer.

As it did with matters of reinstatement, the Legislature left application of the provision for reimbursement to the broad equitable discretion of the WCAB. However, in considering claims for reimbursement certain general principles may be distilled from this and other areas of law in which lost wages and benefits are at issue. One overriding limitation, specifically iterated in Labor Code section 132a, is that lost wages and benefits are recoverable only if they were caused by the acts of the employer. (*Leamon* v. *Workers' Comp. Appeals Bd., supra,* 190 Cal.App.3d at p. 1415.) This leads

record would not support the conclusion that but for the injury she would have performed adequately.

to a number of subsidiary principles, including: An employee may not recover lost wages and benefits for any period in which he or she was not ready, willing and able to perform the duties of his or her position. (See Gov. Code, §§ 19180, 19584; see *Thorne* v. *City of El Segundo* (9th Cir. 1986) 802 F.2d 1131, 1137.) An employee cannot recover for a willful loss of earnings and thus such things as a failure to remain in the labor market, a refusal to accept or quitting other employment, and a failure to diligently search for work will preclude recovery. (See *Sangster* v. *United Air Lines, Inc.* (9th Cir. 1980) 633 F.2d 864, 868.) An employee is required to mitigate damages and a failure to mitigate may preclude an award (*Sias* v. *City Demonstration Agency* (9th Cir. 1978) 588 F.2d 692, 696), and in any event an award for lost wages must be reduced by such sums as the employee earned or might reasonably have earned during the relevant period (Gov. Code, §§ 19180, 19584; *Wallace* v. *State Personnel Board* (1962) 204 Cal.App.2d 759, 763-764 [22 Cal.Rptr. 614]). Depending upon the statutory scheme, the burden of proof with respect to some issues may be shifted to the employer, but to warrant an award the employee must establish at least a prima facie case of lost wages and benefits caused by the discriminatory acts of the employer. (*Goff* v. *USA Truck, Inc.* (8th Cir. 1991) 929 F.2d 429, 430; *Harper* v. *General Grocers Co.* (8th Cir. 1979) 590 F.2d 713, 717.)

In light of these standards we find no error in the WCAB's failure to make an award of lost wages and benefits to Dyer. As the workers' compensation judge noted, Dyer's compensation award established that she was totally disabled until August 5, 1987, and thus was not ready, willing and able to perform the duties of her former position during the preceding period. Although Dyer asserts that an employer should not be allowed to escape liability based upon a subsequent determination of the severity of an injury, retrospective factfinding is the nature of virtually all adjudication. It would be anomalous for the WCAB to award Dyer compensation based upon total disability and then conclude that she was ready, willing and able to perform her duties during the same time period.

There is scant evidence in the record with respect to the time period after August 5, 1987. Dyer testified that she worked as a housekeeper in a hotel for two or three weeks in October 1988, but quit because of pain in her wrist. In November or December 1988 she began training as a school bus driver but quit when she realized she could not handle the job. Otherwise the record reflects only that she did not work during the relevant period; it does not indicate that she diligently sought or was ready, willing or able to maintain employment.

In finding in favor of Dyer on her claim under Labor Code section 132a, the WCAB concluded only that her ability to perform to the standards of the

Franchise Tax Board was affected by her injury and that her abilities should not have been judged while affected by injury. The WCAB did not find and, as we have noted, the evidence would not have supported a finding, that but for her injury or the discrimination of the Franchise Tax Board Dyer would have successfully completed her probation. In fact, there appears to be substantial doubt that Dyer would have successfully completed her probationary period in the absence of her injury. (See *ante*, fn. 3.) On this record the claim that the discriminatory act of the Franchise Tax Board caused a continuing wage and benefit loss to Dyer is entirely speculative and conjectural and the refusal of the WCAB to make an award for lost wages and benefits was not an abuse of its discretion.

DISPOSITION

The award is affirmed.

Blease, Acting P. J., and Raye, J., concurred.

Petitioner's application for review by the Supreme Court was denied May 26, 1994.